United States Court of Appeals,

Fifth Circuit.

No. 93-5390.

Stephen R. NEWTON, Plaintiff-Appellee,

v.

CITY OF HENDERSON, Defendant-Appellant.

March 16, 1995.

Appeal from the United States District Court for the Eastern District of Texas.

Before REAVLEY, DUHÉ and PARKER, Circuit Judges.

REAVLEY, Circuit Judge:

Stephen R. Newton brought suit for unpaid overtime compensation against the City of Henderson (the "City") under 29 U.S.C. § 207, which codifies section 7(k) of the Fair Labor Standards Act ("FLSA"). After a bench trial, the district court found that: 1) Newton was an employee during the excess overtime hours claimed; 2) the City had not demonstrated good faith reliance that its actions were not unlawful; and 3) the City was guilty of a "continuing violation." The court awarded overtime compensation dating back to August, 1988 and also awarded liquidated damages. The City appeals. We hold that no FLSA violation was proved. We reverse and render judgment in favor of the City.

BACKGROUND

Newton was employed by the City as a police officer. In October 1987, he was assigned to the United States Drug Enforcement Agency ("DEA") East Texas Drug Task Force. He remained a member of

1

the Task Force until his resignation on September 30, 1991. Newton claims he was not compensated for all of the overtime hours he worked as a Task Force Officer. Under the agreement entered into by the City and the DEA, the City remained Newton's employer and was responsible for "establishing the salary and benefits, including overtime, of the HPD [Henderson Police Department] officer assigned to the Task Force, and making all payments due [him]." The DEA had the right to control Newton's day-to-day functions and duties.

The City had a personnel policy that required all police department employees to obtain approval prior to working overtime. Newton admits that prior to March 7, 1990, he was not authorized by the City to work any overtime. After this time, he was authorized to work a limited amount of overtime (approximately 12.5 hours per biweekly pay period). Newton did request permission to work additional overtime. He made these requests to his supervisors at the Henderson Police Department, Captain Roy Tate and Chief Randall Freeman. Each time, Newton was told that he could not be paid for any more overtime, because the City could not afford to pay him.

Newton submitted time reports to the City and was paid for all of the hours claimed on these time reports. City policy required that overtime be reported within 72 hours of the time it was actually worked. Newton admits that he never made a demand for payment for unauthorized overtime hours until he resigned in September, 1991. Newton did submit a separate time report to the DEA, a "352 form," which reflected the overtime hours he is now

2

claiming. Newton knew that these forms were not for payroll purposes, and he did not present the DEA forms to the City until he resigned in September, 1991.

Newton claims that his City supervisors, Captain Tate and Chief Freeman, knew that he was putting in excess overtime hours, because he reported his activities to them on a daily basis. He admits that he did not specify the number of hours he was working during these oral reports, but contends that based on these reports Tate and Freeman must have known that he was working overtime. Chief Freeman testified that when he was an undercover agent, he had to work outside his regularly scheduled hours because of the nature of undercover work. Both Freeman and Tate testified that they knew that the type of work Newton was doing required working unscheduled hours. Both also stated, however, that they assumed Newton was taking time off, taking "flex time," so that he never worked more than his authorized hours in a given pay period. Freeman testified that he had spoken with Newton's DEA supervisor, Jim Seay, and that they had an understanding that every time Newton worked overtime, he would take flex time to compensate.

Newton initialed a memo from Seay, written on March 9, 1990, acknowledging that he could work additional overtime hours only as authorized by the City. Seay testified that he did not require Newton to work overtime and was not authorized to require him to do so. He also testified, however, that he would not expect a Task Force Officer to refuse an assignment, because it required unpaid overtime.

3

Newton testified that Seay never explicitly told him to work overtime, but that Seay told him to "go out and do the job." The implication of Newton's testimony is that doing the job required overtime and Newton felt he could not refuse to do the job. Newton does not explicitly state, but we must assume that he implicitly claims that he could not use flex time to compensate for the extra hours that he was working.

Chief Freeman was on the Board of Directors of the Task Force, and therefore, had access to the 352 forms filled out by Newton. He testified that he never saw these forms and the subject of Newton's overtime never came up in the Board Meetings.

### DISCUSSION

In order to recover, the plaintiff must show that he was "employed" by the City during the periods of time for which he claims unpaid overtime. He was employed during those hours if the City had knowledge, actual or constructive, that he was working. *Davis v. Food Lion,* 792 F.2d 1274, 1276 (4th Cir.1986). "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir.1981).

The court in *Forrester,* however, went on to state that if the "employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation

4

of § 207." *Id.* In that case, the appellate court affirmed the district court's grant of summary judgment for the employer because the employee turned in time sheets which did not include the overtime hours and the employee did not demonstrate that the employer should have known that the employee worked more hours than those claimed on his time sheets. Likewise, this court has also upheld a judgment in favor of an employer in an overtime case because the employee in that case was estopped from claiming that she had worked more hours than the hours she claimed in her time sheets. *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir.1972).

In *Brumbelow,* we acknowledged that an employee would not be estopped from claiming additional overtime if "[t]he court found that the employer knew or had reason to believe that the reported information was inaccurate." *Id.* The district court based its judgment in favor of Newton on the fact that Chief Freeman had access to information regarding the Task Force's activities and on Chief Freeman's statement, based on his former experience as an undercover agent, that undercover work can require an officer to work hours outside his regularly scheduled hours. Neither of these facts support a conclusion that in this case that the City had reason to believe that the information reported to it via Newton's signed payroll forms was inaccurate.

The district court stated in its opinion that "much of the [City's] knowledge" is derived from the "position and experience of its Police Chief, Randall Freeman." Freeman was also the City

5

Manager during this time period and was on the Board of Directors of the DEA Task Force, serving as its chairman for one year. These positions gave the Chief access to information regarding all the activities performed by members of the Task Force. The district court found that this access was a basis for imputing constructive knowledge to the City with respect to the overtime being worked by Newton. We hold that as a matter of law such "access" to information does not constitute constructive knowledge that Newton was working overtime.

Newton admits that he was explicitly told by both his HPD supervisors, Freeman and Tate, and his DEA supervisor, Seay, that he could not work unauthorized overtime hours. The City established specific procedures to be followed in order to receive payment for overtime. An employee was required to submit a request for overtime within 72 hours of the time worked and to use a specified payroll form. Newton ignored these procedures. If we were to hold that the City had constructive knowledge that Newton was working overtime because Freeman had the ability to investigate whether or not Newton was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime. The fact that Freeman had access to the Task Force's activities means that perhaps he could have known that Newton was working overtime hours, but the question here is whether he should have known. In light of the fact that Freeman explicitly ordered Newton not to work overtime and in light of the fact that

6

Newton admits that he never demanded payment for overtime already worked, it is clear that access to information regarding the Task Force's activities, standing alone, is insufficient to support the conclusion that the City should have known that Newton was working overtime.

The court also based its conclusion, however, on the fact that Freeman was formerly an undercover narcotics agent and admitted in his testimony that this kind of work requires an officer to work outside his scheduled hours. The court acknowledged that Freeman did not state that undercover work *necessarily* required overtime, but stated that "his testimony suggests" that he should have known that Newton would be required to work overtime. This conclusion ignores Chief Freeman's testimony that he expected his officers to compensate themselves for unscheduled hours worked by taking "flex time." The court does not state that the evidence presented in this case supports the contention, implicit in Newton's claim, that he was required to work more than his scheduled hours and could not take flex time to compensate for those unscheduled hours. Indeed, there is no evidence in this record to support the contention that Newton could not have used flex time to make up for unscheduled hours worked. Since it was reasonable for the Freeman and Tate to assume that Newton was taking flex time to compensate for unscheduled hours worked, it was reasonable for Freeman and Tate to rely on Newton's payroll submissions as a reliable indicator of the number of hours being worked by Newton.

Newton's payroll forms would not be reliable indicators of the

7

number of hours worked, if there was evidence to support the conclusion that the City encouraged or forced Newton to submit incorrect time sheets. The district court noted that in *Brumbelow* this court stressed that there was no evidence that the company *in any manner* encouraged workers to falsely report their hours. The district court could be read to imply that there was such evidence in this case. The court went on to reiterate that Chief Freeman should have known that Newton was required to work overtime by the DEA. Again, the facts upon which the district court relied in imputing constructive knowledge to Chief Freeman do not support a finding that the employer in this case encouraged Newton to falsely report his hours. We find no basis for such a finding in the record before us.

## CONCLUSION

Newton does not deny that the City officially notified him that he could not work additional overtime hours. He does not present evidence that he was unofficially told otherwise. The evidence will not support his contention that the City should have known that the hours reported on his City time sheets were incorrect. We conclude that Newton failed to show that the City violated the FLSA by paying him only for the hours claimed on his time sheets.

REVERSED AND RENDERED.