# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2009

Charles R. Fulbruge III
Clerk

No. 08-50316

William VON FRIEWALDE, Dave HARTMAN, Mark COMPAS, Robert
BEVINS, et al.

Plaintiffs-Appellants

v.

BOEING AEROSPACE OPERATIONS, INC., d/b/a BOEING LOGISTICS
SUPPORT SYSTEMS

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
(5:06-VCV-236)

Before GARWOOD, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-appellants, approximately eighty current and former employees
of defendant-appellee, Boeing Aerospace Operations, Inc., d/b/a Boeing Logistics
Support Systems (Boeing), appeal the summary judgment dismissal of their
collective action alleging that Boeing withheld overtime pay in violation of
section 207 of the Fair Labor Standards Act (FLSA). 29 U.S.C. § 207. We hold

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

that opt-in appellants Edward Montelongo and Jesus Lozano have presented sufficient evidence to preclude summary judgment, therefore we VACATE and REMAND the dismissal of their claims. However, we AFFIRM the district court's dismissal of all other claims.

## I. FACTS AND PROCEEDINGS BELOW

Appellants were employed at a Boeing facility in San Antonio, Texas dedicated to maintaining and repairing military aircraft. Appellants worked as mechanics; quality inspectors; "tool control attendants" charged with dispensing and inventorying specialized tools from the "tool crib"; and ramp operators responsible for ushering aircraft in and out of the facility.

Boeing used a computer program known as "AutoTime" to monitor employee hours and job performance. For attendance purposes, employees were required to scan a personalized identification badge at the beginning and end of each workday at any of the numerous computers located throughout the facility.[1] Under this system, employees had to "clock in" any time within thirty minutes prior to their assigned shift and "clock out" any time within eighteen minutes after their shift, but they were only paid for the set number of hours covered by their shift. So long as the employees clocked in and out within these "grace periods," AutoTime automatically erased their actual clock-in/out times. However, if an employee clocked in before this 30 minute grace period his actual clock in time would register in the computer and he would automatically be awarded (in addition to his regular shift time) compensable time for the entire period between his clock in and the beginning of his regular shift time. Similarly, if an employee clocked out after the 18 minute grace period his actual

---

[1]Additionally, employees used those same computers to "scan labor," which required them to scan their badges and enter work order numbers at the start and finish of each particular task assigned to them.

clock out time would register in the computer and he would automatically be awarded (in addition to his regular shift time) compensable time for the entire period between the end of his regular shift time and his clock out. Company policy, of which appellants were informed and aware, forbade work without overtime authorization during these grace periods when they were clocked-in but not on-shift. After clocking in, appellants' only duty was to report to their work stations by the start of their shifts. Appellants were also instructed to cease working fifteen to thirty minutes before the end of their shifts to allow time for cleaning up, putting away tools, and entering time and job data on company computers.

The four named appellants (Von Friewalde, Hartman, Compas and Bevins) filed this collective action in the Western District of Texas, claiming that Boeing unlawfully denied them and their fellow employees compensation for overtime work in violation of section 207 of the FLSA. Subject to Boeing's right to later seek decertification, the parties entered into a conditional agreement certifying the collective action under 29 U.S.C. § 216(b), which allows one or more employees to bring suit on behalf of other "similarly situated" employees with their written consent. Pursuant to this agreement, the parties notified potential plaintiffs of the suit, and approximately seventy-six other current and former Boeing employees opted into the collective action. Appellants sought overtime wages for the following activities allegedly performed outside of their actual shift times: walking between their lockers and their work stations; obtaining and inventorying tools; donning and doffing ordinary protective gear such as safety glasses and hearing protection; and entering time and performing other work-

related tasks on Boeing's computers.[2]

Boeing filed a motion for summary judgment and a motion to decertify the collective action. On March 8, 2008, the district court granted Boeing's motion for summary judgment, finding that appellants had failed to raise a fact issue as to whether Boeing had actual or constructive knowledge that appellants had performed uncompensated overtime work. As a consequence, the court dismissed Boeing's motion to decertify the collective action as moot. On March 13, 2008, appellants filed a motion for rehearing, which, because it was filed within ten days of the judgment, the district court treated as a FED. R. CIV. P. 59(e) motion to alter or amend the judgment. On June 10, 2008, the district court denied appellants' motion, upholding its prior decision and additionally finding that the activities for which appellants sought overtime pay were non-compensable as a matter of law. Appellants timely filed this appeal.

## II. STANDARD OF REVIEW

We review a grant of summary judgment *de novo* under the same legal standards applied by the district court. *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 433–34 (5th Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Fact questions are viewed in the light most favorable to the nonmovant and questions of law are reviewed

---

[2]Appellants' original complaint also asserted that Boeing's "9/80 program" violated the FLSA, because they were required to work over forty hours on some weeks without receiving overtime pay. Under the 9/80 program, employees still worked eighty hours every two weeks, but they were required to do so over a period of nine days rather than ten, working extra hours on most days and taking off every other Friday. However, plaintiffs later amended their complaint and abandoned this claim, purportedly in response to an Opinion Letter issued by the Department of Labor finding that the 9/80 work schedule did not violate the FLSA's overtime provisions.

*de novo.*" *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995). At least as to issues on which the nonmoving party would bear the burden of proof at trial, "'[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial.'" *Harvill* at 433.

## III. DISCUSSION

The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Moreover, the FLSA generally requires employers to pay employees for all hours worked. *See* 29 U.S.C. §§ 206, 207; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003), *aff'd*, 126 S.Ct. 514 (2006). However, not all activities performed in the workplace are necessarily compensable under the FLSA. *See* 29 U.S.C. § 254(a). Therefore, as a threshold matter, we must first consider whether any of the "work" for which appellants seek overtime pay was compensable as a matter of law.[3]

*A. Compensability*

For the purposes of summary judgment, the district court assumed that at least some of the activities for which appellants sought overtime pay were

---

[3]We will assume that the uncompensated activities in this suit constitute "work" under the FLSA, which the Supreme Court has broadly defined as "'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *IBP, Inc. v. Alvarez*, 126 S.Ct. 514, 519 (2006) (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 64 S.Ct. 698, 703 (1944)). In fact, the Court has clarified that even "'exertion' [is] not in fact necessary for an activity to constitute 'work' under the FLSA," for an employee may be hired "'to do nothing, or to do nothing but wait for something to happen.'" *Id.* (quoting *Armour & Co. v. Wantock*, 65 S.Ct. 165, 168 (1944)).

compensable. However, upon denying appellants' motion for rehearing, the district court ultimately concluded that the following activities were non-compensable as a matter of law: "(1) obtaining tool bags; (2) donning safety glasses and hearing protection; (3) walking to and from lockers; (4) signing on to and using company computers; and (5) cleaning up their designated work locations at the end of their shifts."

In *Anderson v. Mount Clemens Pottery Co.*, the Supreme Court held that, subject to a *de minimis* exception, certain preliminary activities such as donning work clothing and walking between the clock-in station and an employee's work station were compensable under the FLSA. 66 S.Ct. 1187, 1195 (1946). Believing that the FLSA had been "interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees," Congress responded by passing the Portal-to-Portal Act of 1947. *See* 29 U.S.C. § 251. The Portal-to-Portal Act amended the FLSA to specifically relieve employers of the obligation to compensate employees for

> "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."

*Id*. § 254(a). In *Steiner v. Mitchell*, the Supreme Court determined that preliminary or postliminary activities are compensable if they are not specifically excluded under section 254(a)(1) and are "an integral and indispensable part of the principal activities for which covered workmen are employed." 76 S.Ct. 330, 335 (1956). "To be 'integral and indispensable,' an

6

activity must be necessary to the principal work performed and done for the benefit of the employer." *Alvarez*, 339 F.3d at 902–03 (citing, *inter alia*, *Dunlop v. City Elec., Inc.,* 527 F.2d 394, 398 (5th Cir. 1976)). However, even if an activity might otherwise be compensable, we may disregard *de minimis* claims "'concern[ing] only a few seconds or minutes of work beyond the scheduled working hours.'" *Id.* at 903 (quoting *Anderson*, 66 S.Ct. at 1195). As the Ninth Circuit said in *Lindow v. United States*, 738 F.2d 1057 (9th Cir. 1984), "[m]ost courts have found daily periods of approximately 10 minutes *de minimus* even though otherwise compensable." *Id.* at 1062. *See also Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 564 (E.D. Tex. 2001) (same), *aff'd*, 44 Fed App'x 652 (5th Cir. 2002 (affirmed "essentially for the reasons stated by the careful opinion of Judge Hanna").

We agree with the district court that obtaining standard tool bags (located in easily accessible cabinets near appellants' lockers), clocking in and out on AutoTime (a process that normally took seconds), and donning and doffing generic safety gear (*e.g.*, hearing and eye protection) involved a *de minimis* amount of time and therefore were non-compensable activities under the FLSA. *See id.*; *see also Anderson*, 66 S.Ct. at 1195. We also hold that the time appellants spent walking to and from their lockers at the beginning and end of each shift was non-compensable, as the Portal-to-Portal Act specifically provides that walking before and after the performance of an employee's principal activities is non-compensable.[4] *See* 29 U.S.C. § 254(a)(1). And, we also agree with the Second Circuit – and with the district court here – that donning and

---

[4]We recognize that, under the "continuous workday" rule, "any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity . . . is covered by the FLSA." *Alvarez*, 126 S.Ct. at 525; *see* 29 U.S.C. § 254(a)(1). Here, however, appellants seek compensation for time spent walking before and after they performed their principal activities each day.

doffing of generic protection gear such as safety glasses and hearing protection, are in any event "non-compensable, preliminary tasks" under the Portal-to-Portal Act. *See Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007).

However, we conclude that the following activities, if actually proven to involve more than a *de minimis* amount of time, were compensable as a matter of law: performing substantive tasks on Boeing computers, such as checking work-related emails and conducting research pertinent to job assignments; checking specialized tools in and out of the tool crib and, for those working as tool control attendants, preparing the tool crib prior to the shift and putting away tools at the close of the shift; and cleaning up work stations at the end of the shift. As these activities were necessary to appellants' principal duties and were performed for Boeing's benefit, they were "integral and indispensable" to appellants' jobs. *See Alvarez*, 339 F.3d at 902–03. Therefore, the district court erred to the extent that it held that these activities were not compensable as a matter of law.

Our determination that some of the complained-of activities are compensable does not necessarily mean that appellants are entitled to recover under the FLSA. Appellants must still meet their burden of proving that they performed these activities "off the clock" and were not adequately paid for their efforts.

B. *Summary Judgment Evidence*

An employee seeking unpaid overtime compensation under the FLSA must first demonstrate that he "performed work for which he was not properly compensated." *Anderson*, 66 S.Ct. at 1192. This may prove difficult where the employer has failed to keep accurate or adequate records, as appellants argue is the case here due to Boeing's use of AutoTime. *See id.* In such a situation,

8

however, "[t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Id*. Rather, an employee is deemed to have met his burden

> if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id*.; *see also Harvill*, 433 F.3d at 441.

Further, an employee must prove that he was "employed" during the time for which he seeks overtime compensation, which requires a showing that the employer had either actual or constructive knowledge that he was working overtime. *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). Constructive knowledge exists if by "exercising reasonable diligence" an employer would become aware that an employee is working overtime. *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973). "'An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.'" *Newton*, 47 F.3d at 748 (alteration in original) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)); *see also* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time."). However, if the "'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime

work, the employer's failure to pay for the overtime hours is not a violation of § 207.'" *Newton*, 47 F.3d at 748 (quoting *Forrester*, 646 F.3d at 414); *see also Harvill*, 433 F.3d at 441.

The district court determined that appellants had failed to raise a genuine issue of material fact as to whether Boeing had actual or constructive knowledge that appellants were working unpaid overtime; therefore, the court granted Boeing's motion for summary judgment. The primary evidence presented by appellants in this case was the deposition testimony of three named appellants, two opt-in appellants, and several Boeing managers. None of the other appellants testified, nor did appellants provide any substantive answers to Boeing's interrogatories.

Appellants allege that there exists a "common nucleus of liability facts" among all of their claims. After reviewing the evidence, we disagree. Indeed, unlike the employees in *Anderson* and *Alvarez*, the details surrounding each of their claims vary in significant ways, such that few if any of the appellants are "similarly situated" for the purposes of the FLSA. *See* 29 U.S.C. § 216(b). Therefore, we address each appellant's claim individually. Moreover, we conclude that the claims of all those appellants who have not produced *any* evidence at all, including named appellant Mark Compas and all but two of the opt-in appellants, necessarily fail. Those appellants had numerous opportunities to provide deposition testimony, affidavits, documents, or answers to interrogatories in support of their claims.[5] As it stands, we know nothing of those appellants other than their names and the fact that they were allegedly

---

[5]Appellants had ample time to come forward with evidence in support of their claims, as the deadline for completing discovery was at their requests extended on multiple occasions. In response to Boeing's interrogatories, appellants repeatedly stated that they were "in the process of attempting to determine the requested information and will continue to obtain and supplement this information," yet they never did so.

employed in some unidentified capacity by Boeing when AutoTime was in use. Therefore, we affirm the district court's dismissal of their claims. As to those appellants who submitted depositions (or other summary judgment evidence), we review the relevant portions of their evidence here.

### i. Deposition Testimony

Named appellant Robert Bevins worked as a mechanic and ramp operator at Boeing. Bevins stated that, generally speaking, he considered the time between clocking in and the start of his shift to be his own personal time. However, Bevins testified that occasionally when working as a ramp operator, he and his fellow crewmen would be instructed to start work approximately fifteen minutes before their shift when an aircraft arrived at the facility early. According to Bevins, this occurred perhaps five times over a six-year period. Bevins also testified that, over the course of approximately a decade, he was forced on two or three occasions to start work ten to fifteen minutes early to take care of potentially hazardous situations (*e.g.*, an engine suspended from a cable) that were left by workmen on the preceding shift. Additionally, Bevins stated that occasionally managers would begin crew meetings five to ten minutes before a shift, but when crew members complained, the managers would nearly always wait until the start of the shift to commence. Finally, Bevins testified that he was forced to stay fifteen to twenty-five minutes late twice to search for a lost tool and approximately four times (of unestimated length) to place protective covers on airplane engines. Bevins did not request overtime compensation on any of these occasions.

Named appellant Dave Hartman worked as a quality inspector at Boeing, where he was responsible for inspecting the mechanics' work. Hartman testified that when he was required to stay late, he would normally send an email to his manager, who would approve the overtime work. Upon a couple of occasions

when he was not paid for an unestimated amount of overtime, Hartman complained to Boeing's ethics department, which "blew [him] off." Hartman also stated that on most days he did not work late, but when he was specifically asked to by his managers, he was compensated for it. Finally, Hartman said that, on his own initiative, he would often check his work email on company computers five to ten minutes before his shift without telling his superiors.

Named appellant William Von Friewalde, who worked as a mechanic, claimed that he should be paid fifteen minutes of overtime per day based upon the average amount of time that he was clocked-in but not on-shift. However, it is apparent from his testimony that he was not always performing compensable activities during those grace periods for which he now seeks compensation. While some of his post-shift time may have been spent performing compensable activities such as cleaning up his work station, the only consistent pre-shift activities that Von Friewalde complained of were obtaining his tool bag and his personal safety equipment before each shift, both of which we have concluded involve a *de minimis* amount of time and are non-compensable. When pressed for more specifics about his overtime claims, Von Friewalde stated that on the three or four occasions when he did inform the Boeing Human Relations department that he was not being paid for overtime work, they told him that his time was "locked" in the computer and could not be changed. Von Friewalde estimated that the total amount of overtime at issue in all these discussions was at most half an hour, which he accumulated over a year-long period. Additionally, Von Friewalde stated that most of his supervisors would ensure that he was paid overtime if he told them he had worked extra hours. However, he also testified that most of the time he would not request overtime for the extra five to ten minutes he spent cleaning up at the end of a shift, because to do so involved too much effort on a regular basis and

12

felt like "chasing a rabbit." Finally, Von Friewalde alleged that some of his managers physically erased his overtime hours, though he could not provide any details as to how much time was deleted or when or how often that occurred.

Edward Montelongo, an opt-in appellant, was also a mechanic at Boeing. Montelongo testified that when he performed overtime work specifically at his manager's request (*i.e.*, when he was instructed to come into work early, when planes would arrive before the scheduled shift, or when a particular task could not be completed by the end of the shift), he was not always compensated. When he complained to his managers, they assured him that they would "take care of it" but never followed through. He testified that on a number of occasions his managers knowingly required him to work anywhere from half an hour to two hours of overtime for which he was never paid.[6]

Jesus Lozano, an opt-in appellant who worked as a tool control attendant in the tool crib, presented the most satisfactory evidence of any appellant. Unlike any of the other appellants, Lozano kept track of his time over a three to four year period and submitted spreadsheets to the district court purportedly indicating when he performed and was paid for the overtime and when he was not paid for overtime performed. In order to produce a general estimate of his unpaid overtime, Lozano reviewed his spreadsheets covering one month and calculated approximately five hours of overtime for which he was never paid. Although Lozano was not allowed to dispense tools prior to the start of the shift, he testified that he consistently had to begin work ten to twenty minutes early to prepare the tool crib for the start of the shift, when the mechanics would come to obtain their tools. Therefore, Lozano attempted to arrive early enough every

---

[6]Because AutoTime automatically registers overtime when an employee clocks in more than thirty minutes prior to a shift, we note that this apparently would have required his managers to manually erase Montelongo's time.

13

day to clock in at least a little more than thirty minutes before his shift, so that AutoTime would automatically record his overtime. As a result, Lozano admitted that he received overtime pay "almost every day." However, when he failed to clock in before the start of the thirty-minute grace period, Lozano generally did not inform his superiors (allegedly because they told him not to bother) and therefore lost that overtime. In addition, Lozano stated that on most days, he was able to close up the tool crib promptly at the end of his shift. However, often he had to stay several minutes late to receive and inventory tools when the mechanics were running behind schedule. Lozano stated that when he complained to his manager about not being paid overtime, his manager took no action other than to advise him to leave as quickly as possible at the end of the shift. However, Lozano did admit that at least one of his managers authorized overtime freely when notified.

For their own part, all of Boeing's managers who were deposed testified that they always paid overtime when it was pre-authorized or when an employee informed them that he or she had worked extra time. One manager, Wallace Hatcher, stated that although he would approve overtime after-the-fact when requested, he would discourage his employees from working unauthorized overtime. Hatcher stated that it was not uncommon for some employees to work on company computers prior to the start of their shift for their own convenience, but he indicated that those employees could have waited until they were on the clock to perform those tasks. He also admitted to having on some occasions erased unauthorized overtime on some employees' timecards that had registered automatically when they clocked out after the eighteen-minute grace period at the end of their shifts.

Another manager, Jesus Morales, stated that it was sometimes impossible for the mechanics to stop work with enough time to clean up before the shift's

14

end, because they were required to leave the workplace in a safe condition. Morales and another manager, Robert Ryan, testified that they would always authorize overtime when their employees requested it but that employees would often work several minutes past their shifts without asking for overtime. Morales believed that most employees did not consider it worthwhile to go through the trouble of seeking overtime authorization for just a few minutes of extra work.

*ii. Analysis*

We conclude that, for several reasons, appellants Bevins, Hartman, and Von Friewalde have failed to present sufficient evidence to permit a reasonable factfinder to conclude that they had met their burden under the FLSA. First of all, their claims rest upon an amount of unpaid overtime that is *de minimis* as a matter of law. *See Anderson*, 66 S.Ct. at 1195 ("[I]t is appropriate to apply a de minimis doctrine so that insubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory workweek."); *see also Alvarez*, 339 F.3d at 903. In *Anderson* and *Alvarez*, the workers produced evidence that they regularly engaged in the same compensable activities day after day yet were never paid for their efforts. *See Anderson*, 66 S.Ct. at 1190–91; *see also Alvarez*, 339 F.3d at 898–99. Therefore, the accumulated amount of unpaid overtime was substantial, and a factfinder could reasonably infer the amount of damages based upon the activities in question and the number of days worked. Here, in contrast, neither Bevins, Hartman, nor Von Friewalde proved that they regularly performed compensable activities without being paid. Rather, on random occasions occurring perhaps a handful of times over the course of a year or more, they allegedly worked overtime amounting to some small portion of an hour without compensation. Their testimony reveals the *de minimis* nature of their claims and does not constitute "sufficient evidence

15

to show the amount and extent of that work as a matter of just and reasonable inference" under the standard laid out in *Anderson*. *See* 66 S.Ct. at 1192.

Moreover, these appellants admitted that, on the vast majority of occasions, they were paid when they notified their superiors that they had worked overtime. Their claims largely arise from days on which they failed to inform their managers that they had been forced to stay a few minutes late to finish cleaning up, return tools, etc. While an employer may not "stand idly by" without paying an employee that he knows or should know is working overtime, an employee has a duty to notify his employer when he is working extra hours. *See Newton*, 47 F.3d at 748. Further, it is undisputed that all of Boeing's employees were aware of its policy prohibiting overtime work without authorization, and we have expressly rejected the notion that an employer does "not have the right to require an employee to adhere to its procedures for claiming overtime." *Id.* at 749. Therefore, in the case of Hartman for instance, Boeing is not responsible for paying for the few moments he voluntarily spent checking work emails prior to his shift without notifying his manager. More broadly speaking, Boeing cannot be held liable for the sporadic occasions when its employees chose to start work early or were forced by circumstances (perhaps of their own making) to work a few minutes late but never informed their superiors.

In the case of Von Friewalde, his claim that he worked on average fifteen minutes of unpaid overtime per day is, on its face, substantial enough to overcome the *de minimis* rule. However, Von Friewalde's testimony does not establish that he was performing an extra fifteen minutes of compensable work each day, but rather only that he was clocked-in for an extra fifteen minutes. As the district court observed, "[t]he clock-in and clock-out times do not show what the employee was actually doing during those times, and they are not evidence

16

of actual or constructive knowledge that compensable work was being performed." Von Friewalde's testimony does not support the conclusion that he should be paid for all of the time he was clocked-in but not on-shift; nor does it contain, or furnish any basis for inferring, any reasonable estimate of the amount of time worked on such occasions. Further, Von Friewalde admitted that he normally did not notify his superiors that he was working overtime. And, when he did request overtime but they still refused to pay him, the amount of time involved was *de minimis*.

In *Lindow*, "[a]s a general rule, the [employer] corps did not pay overtime for intervals of less than fifteen minutes." *Id*., 738 F.2d at 1063. In denying recovery for pre-shift compensable activities, the Ninth Circuit observed:

> There was also a wide variance in the amount of pre-shift time spent on compensable activities as opposed to social activities. Although plaintiffs spent an average of 7 to 8 minutes a day reading the log book and exchanging information, they did not always perform these duties before their shifts. The Corps would have had difficulty monitoring this pre-shift activity. Moreover, although plaintiffs reported early on a regular basis, they did not regularly engage in compensable activities. The district court found that 'most employees came in about 15 minutes early, and sometimes spent a portion of this time reading the log book or exchanging information.' Although plaintiffs' aggregate claim may be substantial, we conclude that their claim is *de minimus* because of the administrative difficulty of recording the time and the irregularity of the additional pre-shift work.
>
> . . .
>
> Occasionally, a lockage would occur at the time of a shift change and early arriving employees would be sent to the locks to relieve the operator. This practice enabled the departing employee to avoid having to work past the scheduled shift.
>
> The district court found that an employee was asked to relieve

17

> the previous operator only once or twice a month, and that it took 5 to 15 minutes to relieve an operator. It properly concluded that this claim was *de minimus*. The aggregate amount of time involved was insignificant and the practice was irregular.

*Id.* at 1063-64. Much of the foregoing is analogous to most of the claims here and properly supports their denial.

On the other hand, we conclude that Montelongo has created a fact issue as to whether Boeing violated the FLSA in failing to pay him overtime. Unlike the other appellants discussed above, Montelongo claims to have worked a substantial amount of overtime without pay, up to two hours on some days, which rises above the *de minimis* threshold. Additionally, he performed this work at his managers' request, and he notified them directly when he was never paid for his efforts. Therefore, because his managers were clearly aware that Montelongo was working overtime, Boeing's policy against unauthorized overtime offers no defense.

We also conclude that Lozano has presented sufficient evidence to create a fact issue as to whether he performed uncompensated overtime work of which his superiors knew or should have known. Lozano testified that he consistently performed overtime work for which he was not compensated, and he was the only appellant to submit any sort of documentary evidence in support of his claim. Unlike the other appellants in this collective action, for whom unpaid overtime was a seemingly random and rare event, Lozano was forced to start work early and to finish late on a daily basis. Apparently, the Boeing policy against working during the pre- and post-shift grace periods did not apply to tool control attendants, who were expected to use that time to prepare the tool crib before the shift and to put away everyone's tools at the end of the shift. It is also clear from Lozano's testimony that his superiors knew or should have known that he was working extra hours on the days for which he did not receive

18

overtime.

Thus, for summary judgment purposes, we hold that opt-in appellants Montelongo and Lozano have adequately demonstrated that they performed a more substantial than *de minimus* amount of uncompensated overtime work and have produced "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *See Anderson*, 66 S.Ct. at 1192. Therefore, the district court erred in dismissing their claims at this stage of the proceedings. However, we conclude that all of the other appellants have failed to present any evidence sufficient to support a judgment for recovery in their favor under the FLSA and that hence summary judgment was properly granted dismissing their claims. Most appellants, including Compas and almost all of the opt-ins, failed to present any evidence at all. As to named appellants Bevins, Hartman, and Von Friewalde, their claims fail for a number of reasons: either they worked a *de minimis* amount of overtime, they failed to notify their superiors, or they performed overtime work on their own initiative in contravention of Boeing's overtime policy.

## IV. CONCLUSION

We hold that appellants Montelongo and Lozano have presented sufficient evidence to create a fact issue. Therefore, we VACATE and REMAND as to their claims. However, as we find that all of the other appellants in this collective action have failed to present any sufficient evidence to justify recovery and that summary judgment was properly granted against them, we AFFIRM the district court's dismissal of their claims.