# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 21, 2023

Lyle W. Cayce
Clerk

————————

No. 22-40411

————————

VALERIE LOY, *On Behalf of Herself and All Others Similarly Situated*; REANNA MCNAMES; NANCY GARCIA; SOPHIA SILVA; MARDEL HOLLIE WEGER; CARA BRADFORD; RYAN DEGERSTROM; ANGELA LA MANNA; JAMESON LEE; EYVONNIA MCCRARY-YAYLOR; SHEENA MCLAURIN; LANITA MEADOWS; MATTIE L. ROGERS; DEBRA SMITH; RICARDO MACIAS; MARY PICARDI; LEIGH A. STROLIS; VERONICA ZUBOWSKI; KERI JOHNSON; JULIE HILDEBRANDT; ROBERT SCOTT; DAVID BRENT LITTLE; KATHRYN CAMPBELL,

*Plaintiffs—Appellees*,

*versus*

REHAB SYNERGIES, L.L.C.,

*Defendant—Appellant*.

———————————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:18-CV-4

———————————————————————————

Before HO, OLDHAM, and DOUGLAS, *Circuit Judges*.

DANA M. DOUGLAS, *Circuit Judge*:

Valerie Loy ("Loy") brought a Fair Labor Standards Act ("FLSA") suit against Rehab Synergies alleging violations of the federal overtime law.

The district court, over Rehab Synergies' objection, allowed the case to proceed as a collective action and a jury found Rehab Synergies liable. On appeal, Rehab Synergies contends that the district court abused its discretion by allowing the case to proceed as a collective action. We AFFIRM.

## I.

### A.

Rehab Synergies operates 44 facilities throughout Texas that provide speech, physical, and occupational therapy services. Four regional directors and 44 facility directors ("directors of rehab" or "DORs") have responsibility for these facilities, with each regional director overseeing 10 to 13 facilities, each headed by a DOR. At any given time, Rehab Synergies has between 400 and 600 therapists and assistants working at its facilities. The size of each facility, the number of therapists that work at each facility, and the number of patients served at each facility varies.

The 22 plaintiffs ("Plaintiffs") in this case worked in five different job positions—speech language pathologist ("SLP"), physical therapist ("PT"), physical therapist assistant ("PTA"), occupational therapist ("OT"), and certified occupational therapist assistant ("COTA")—at 20 Rehab Synergies' facilities serving a variety of patients with different conditions, including patients with dementia and patients recovering from strokes, accidents, and surgeries. Plaintiffs reported to a total of 22 different DORs.

Regardless of job title and facility, all Plaintiffs were subject to productivity requirements. Rehab Synergies calculated each therapist's productivity by dividing the amount of his or her billable time by the total hours he or she was clocked in. In general, billable time was time spent on patient care, while non-billable time was time spent performing other tasks when a patient was not present. Plaintiffs used a computer program to clock

in and track their time.  Plaintiffs' productivity requirements ranged from 88% to 100%.  Rehab Synergies had a companywide goal of 90% productivity. To achieve 90% productivity, a therapist needed to record 54 minutes of billable time for every hour on-the-clock, leaving the equivalent of just six minutes per hour to complete non-billable tasks.

Plaintiffs had access to a number of "efficiency measures," however, that could help boost their productivity, including: (1) multi-tasking by performing certain non-billable tasks while also performing a billable task; (2) "layering modalities," meaning providing therapy to more than one patient at the same time or providing more than one type of therapy to a patient at the same time; and (3) supervising student interns, whose productive time would then be included in the supervising therapist's productive time.  Nevertheless, Plaintiffs had trouble meeting productivity requirements.  Plaintiffs claimed that they did non-billable work "off-the-clock" to boost their productivity and as a result worked unpaid overtime. Some Plaintiffs claimed that their DOR expressly told them to change their time entries to increase their productivity, while others claimed that their DOR implied that they should do so.  Some Plaintiffs claimed they explicitly told their DOR that they were working off-the-clock, while others claimed that their DOR was aware of off-the-clock work even though it was not explicitly discussed.

**B.**

In January 2018, Loy filed a lawsuit against Rehab Synergies alleging violations of the FLSA's overtime provisions and seeking to pursue a collective action.  Loy, an SLP who worked at two of Rehab Synergies' locations from March 2014 through August 2016, alleged that she and other therapists often worked more than 40 hours a week without getting paid for overtime due to "onerous productivity requirements" set by Rehab

No. 22-40411

Synergies, and further, alleged that Rehab Synergies knew of and "expressly encouraged" its employees to work "off the clock" in violation of the FLSA.

After limited discovery, the district court granted Loy's opposed motion to conditionally certify a collective action and authorized the sending of notice to approximately 1,000 eligible opt-in plaintiffs comprising "all therapists . . . who have been employed by Defendant at any time since March 8, 2015 at any of Defendant's skilled nursing facilities in the state of Texas." After additional discovery, Rehab Synergies moved to decertify the collective. The district court denied the motion, concluding that Plaintiffs were similarly situated.[1]

Of approximately 1,000 potentially eligible plaintiffs, about 50 joined the collective action. By the time of trial, the number of plaintiffs had dropped to 22. During the trial, Rehab Synergies renewed its motion for decertification both at the close of Plaintiffs' evidence and the close of its own case. Both motions were denied. The jury returned a verdict in favor of Plaintiffs. As requested by Rehab Synergies, the jury made individual liability findings as to whether each Plaintiff proved that he or she performed unpaid work that Rehab Synergies knew or had reason to know was occurring and individual findings as to the amount of unpaid work performed by each Plaintiff. The jury also found that Rehab Synergies had willfully violated the FLSA.

---

[1] Although the district court "conditionally certified" the collective action and allowed notice to be sent pursuant to the two-step *Lusardi* approach—which, at the time, had been permitted but not explicitly endorsed by this court—by the time Rehab Synergies filed its motion for decertification this court in *Swales* had rejected *Lusardi*'s "conditional certification" step. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021) (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)). In evaluating the motion for decertification, the district court applied the standards in *Swales*.

No. 22-40411

## II.

This court reviews a district court's decision to allow an FLSA case to proceed as a collective action for abuse of discretion. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 439 (5th Cir. 2021) (citing *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016)). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005). Whether the district court applied the correct legal standards is reviewed *de novo*; its factual findings are subject to deferential clear-error review; and its ultimate decision to allow the case to proceed as a collective action is reviewed for abuse of discretion. *See Swales*, 985 F.3d at 439.

## III.

Before addressing the merits, we briefly address and dispose of Plaintiffs' contentions that we lack jurisdiction. First, Plaintiffs claim that Rehab Synergies did not preserve its collective action challenge for appellate review because it did not raise it in a post-verdict motion in the trial court. The caselaw cited by Plaintiffs in support is inapposite. While our precedent requires *sufficiency-of-the-evidence challenges* to be raised in a post-verdict motion as a prerequisite to appellate review, *McLendon v. Big Lots Stores, Inc.*, 749 F.3d 373, 374 (5th Cir. 2014), errors in the trial court "duly objected to, dealing with matters other than the sufficiency of the evidence . . . may be raised on appeal" without first being presented to the trial court in a post-verdict motion. 9B Arthur R. Miller, Federal Practice and Procedure § 2540 (3d ed. 2022). Rehab Synergies "duly objected to" the district court's collective action decision three times during the proceedings and thus properly preserved the issue for appeal.

5

No. 22-40411

Second, Plaintiffs assert that this appeal is moot because the district court did not allow Plaintiffs to rely on representative proof, but instead required all 22 plaintiffs to testify and had the jury make separate findings of liability for each plaintiff, such that the Seventh Amendment would preclude reexamination of the jury's findings even if there were new, individual trials. Plaintiffs do not, however, cite a case that supports their position, and we are aware of none. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) (cleaned up). Here, if we determine that the district court abused its discretion in allowing the case to proceed as a collective action, we could grant "effectual relief" by vacating and remanding for individual trials. This case is not moot.

## IV.

Turning to the merits, an FLSA case may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008) ("Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer.") (quoting *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)).

In *Swales*, we explained that, when managing a putative FLSA collective action, "a district court should identify, at the outset of the case,

what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Swales*, 985 F.3d at 441. To decide whether a group of employees is similarly situated, the district court must consider "whether merits questions can be answered collectively." *Id.* at 442. "After considering all available evidence, the district court may conclude that the Plaintiffs and Opt-ins are too diverse a group to be 'similarly situated' for purposes of answering" the relevant legal questions on the merits. *Id.* at 443. If answering the merits questions "requires a highly individualized inquiry into each potential opt-in's circumstances," then the employees are likely not similarly situated. *Id.* at 442. It is the plaintiffs' burden to establish that they are similarly situated. *Id.* at 443.

Pre-*Swales*, district courts following the *Lusardi* approach considered three factors when deciding whether employees were "similarly situated": "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 437 (quoting *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)) (alterations in original); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 226 (5th Cir. 2011). While *Swales* rejected *Lusardi*'s two-step method of "conditional certification" and notice followed by a motion to decertify, courts may still find it useful to consider the *Lusardi* factors to help inform or guide the similarly situated analysis given the similarities between *Swales* and *Lusardi's* second step. *See, e.g.*, *Badon v. Berry's Reliable Res., LLC*, No. 2:19-CV-12317, 2021 WL 933033, at *3 (E.D. La. Mar. 11, 2021). That said, use of these factors is not mandatory, as there is no one-size-fits-all analysis or mechanical test to apply: "The bottom line is that the district court has broad, litigation-management

discretion," "cabined by the FLSA's 'similarly situated' requirement." *Swales*, 985 F.3d at 443.

Rehab Synergies contends that the district court abused its discretion in two ways.  First, Rehab Synergies argues that the district court committed an error of law by misidentifying the "central merits issue."  Second, Rehab Synergies asserts that the district court abused its discretion because all three *Lusardi* factors weigh against a determination that Plaintiffs were similarly situated.  As explained below, we disagree.

## A.

Rehab Synergies asserts that the district court committed legal error when analyzing whether Plaintiffs were similarly situated by misidentifying the "merits question" as whether Plaintiffs were subject to a common productivity requirement instead of whether Rehab Synergies knew or should have known that Plaintiffs were working overtime.  We review *de novo* whether the district court applied the correct legal standards.  *Swales*, 985 F.3d at 439.

To recover unpaid overtime under the FLSA, an employee "must show that he was 'employed' . . . during the periods of time for which he claims unpaid overtime," which requires a showing that the employer "had knowledge, actual or constructive, that he was working."  *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (citation omitted).  Constructive knowledge exists if an employer "exercising reasonable diligence would acquire knowledge of this fact."  *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 827 (5th Cir. 1973).  "An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation."  *Newton*, 47 F.3d at 748 (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646

No. 22-40411

F.2d 413, 414 (9th Cir. 1981)) (alteration in original); *see also* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work"); 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time"). However, "if the 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation[.]'" *Newton*, 47 F.3d at 748 (quoting *Forrester*, 646 F.2d at 414).

After a thorough review of the district court's orders, we conclude that there was no legal error. The district court appropriately considered "whether merits questions [could] be answered collectively." *Swales*, 985 F.3d at 442. In its order denying Rehab Synergies' motion to decertify, the district court addressed both the legal requirement of employer knowledge and Plaintiffs' evidence on the issue when determining whether Plaintiffs were similarly situated.

Rehab Synergies cites *Chambers v. Sears Roebuck and Co.* for the proposition that an employer's use of productivity measures does not demonstrate its actual or constructive knowledge of employees' off-the-clock work to meet those measures. 428 F. App'x 400, 420 (5th Cir. 2011). But the present case is clearly distinguishable from *Chambers*, where the plaintiffs relied only on the fact that the "stated purpose" of the company's productivity requirement was to increase efficiency as circumstantial evidence of constructive knowledge of off-the-clock work while "fail[ing] to cite to any direct evidence that Sears had actual or constructive knowledge that they were performing these tasks outside of the working day." *Id.* Here, by contrast, the district court did not rely solely on the existence of a productivity requirement to determine that Plaintiffs were similarly situated, but also evidence of employer knowledge of off-the-clock work in violation of the FLSA.

No. 22-40411

**B.**

Next, Rehab Synergies asserts that the district court abused its discretion in concluding that Plaintiffs were similarly situated. As the parties structure their arguments in terms of the *Lusardi* factors, for ease of analysis, we consider each factor in turn.

### i. Disparate factual and employment settings

According to Rehab Synergies, the district court erroneously accepted Plaintiffs' assertion of a common productivity requirement, which could only be met by working off-the-clock, while ignoring factual differences in each plaintiff's work situation which undermined a finding of similarity. Rehab Synergies asserts that there was no common productivity goal. Instead, it points to varying productivity requirements applicable to different plaintiffs, ranging from 88% to 100%. Additionally, Rehab Synergies argues that the district court erred by disregarding universally applicable company policies requiring FLSA compliance and prohibiting off-the-clock work. After reviewing the record, we conclude that the district court's factual findings were not clearly erroneous.

Plaintiffs all testified that they were subject to productivity requirements. Additionally, members of Rehab Synergies' management testified to productivity requirements of at least 90% across all facilities. Plaintiffs did not need to be subject to identical productivity requirements to be similarly situated. Nor are company policies requiring FLSA compliance and prohibiting off-the-clock work dispositive given the evidence that Rehab Synergies also had an unwritten policy or practice of off-the-clock work.

In *Roussell v. Brinker International*—a collective action by servers at various Chili's Restaurants challenging an unlawful practice of coercing tipped employees to share tips with tip-ineligible employees—the employer contended that the plaintiffs were not similarly situated because there was

10

"no 'single, uniform, nationwide policy or practice of coerced tip-sharing,'" but only acts of "rogue manager[s]." 441 F. App'x at 226. We disagreed and affirmed the district court's certification because "[a]lthough there was no corporate policy mandating tip-sharing, the district court found the deposition testimony indicative of a pattern." *Id.* "This conclusion was not an abuse of discretion," we said, because the evidence showed that "[a]ll [plaintiffs] were subjected to some form of managerial coercion in tipping," despite differences in their individual employment settings and the lack of a formal corporate policy mandating unlawful tip-sharing. *Id.* Likewise, here, the district court's factual finding that Plaintiffs were all subject to Rehab Synergies' unwritten policy or practice of off-the-clock work was not clearly erroneous, and its conclusion that they were similarly situated not an abuse of discretion.

Rehab Synergies also argues that, even if Plaintiffs were subject to similar productivity requirements, they were still not "similarly situated" because whether the company had actual or constructive knowledge that they were working overtime could not be answered collectively due to their disparate employment settings. Rehab Synergies is correct that Plaintiffs worked in five different positions at 20 different facilities, reported to 22 different directors during the relevant period, and testified to differing interactions with their directors regarding productivity requirements and off-the-clock work. Even with these differences, however, there was evidence that Rehab Synergies had knowledge of Plaintiffs' off-the-clock work. "There is need for care in evaluating distinctions among employees, but those distinctions must make a difference relevant to the legal issues presented." *Id.* at 226–27. Here, the evidence supported the conclusion that Plaintiffs were all subject to Rehab Synergies' practice or pattern of knowingly countenancing or expressly encouraging off-the-clock work. The

district court did not abuse its discretion in concluding that they were similarly situated.

## ii. Individualized defenses

Next, Rehab Synergies contends that it had two "individualized defenses" that were not appropriate for collective treatment: (1) Plaintiffs' differing access to and use of various efficiency measures to boost productivity; and (2) Plaintiffs' differing achievement of productivity goals. Nothing about the collective action mechanism prevented Rehab Synergies from presenting evidence of its defenses, especially considering that Plaintiffs were not permitted to rely on representative proof and instead were required to testify individually. Indeed, there was testimony at trial as to both defenses, including testimony elicited from Rehab Synergies on cross-examination.[2] This supports the conclusion that it was not an abuse of discretion for the district court to allow the case to proceed as a collective action. Furthermore, while Rehab Synergies emphasizes factual differences between individual Plaintiffs, it has not shown that the district court's determination that its defenses applied to Plaintiffs' common claims was erroneous.

## iii. Fairness and procedural considerations

Last, Rehab Synergies argues that the trial itself demonstrated that it was an abuse of discretion to permit the case to proceed as a collective action. Rehab Synergies focuses on (1) the district court requiring all 22 Plaintiffs to testify (either live or by deposition) and requiring the jury to make individual findings as to each Plaintiff, which it claims resulted in 22 "mini-trials" and

---

[2] In their brief, Plaintiffs suggest that the jury appears to have "at least partially credited the individualized defenses" because it did not award any Plaintiff the full amount of unpaid overtime requested, nor apply an across-the-board reduction to each Plaintiff.

revealed the district court's "tacit recognition" that Plaintiffs were not similarly situated; and (2) the district court allowing Plaintiffs' counsel to argue to the jury in closing that it should draw an adverse inference from Rehab Synergies' failure to call the director of each facility to testify to rebut each Plaintiff.  In short, Rehab Synergies argues that the trial resulted in a "disparity" where Plaintiffs were able to testify individually and simultaneously take advantage of the benefits of a collective action, while arguing to the jury that Rehab Synergies needed to put on proof of its defenses as to each Plaintiff by calling all individual facility directors to testify.  We disagree.

First, it is not improper for a district court to limit representative testimony or require individual testimony.  We approved of a similar practice in *Roussell*.  *See* 441 F. App'x at 227 ("We would give Brinker's arguments more credence if this case had proceeded on a truly representative basis. Instead, all 55 plaintiffs presented individualized evidence through testimony to the jury or deposition excerpts to the court.").  Moreover, it was Rehab Synergies that successfully moved the district court—over Plaintiffs' objection—to require the jury to make individual findings of liability.

Second, Plaintiffs' adverse-inference argument does not suggest a "disparity" as a result of the case proceeding as a collective action; rather, the record shows that any "disparity" had other causes.  Pre-trial, Rehab Synergies filed a motion in limine to preclude any adverse inference arguments *if* Plaintiffs were allowed to try the case on representative proof and Rehab Synergies was not allowed to call each individual Plaintiff as a witness or was otherwise limited in the number of rebuttal witnesses.  Here, however, the district court instead required every Plaintiff to testify at trial. When Rehab Synergies attempted to include all its facility directors on its witness list for trial, even though it had failed to disclose all of them in its initial or supplemental Rule 26 disclosures, the district court granted

No. 22-40411

Plaintiffs' motion to limit Rehab Synergies to calling timely-disclosed witnesses. Finally, Rehab Synergies' request at trial for a jury instruction prohibiting the drawing of an adverse inference based on the failure to call a witness was denied, presumably because the case had not proceeded on representative proof. From the foregoing, we conclude that the district court's decision to allow the case to proceed as a collective action did not result in a lack of fairness or procedurally prevent Rehab Synergies from defending the case.[3]

## V.

In sum, after reviewing the briefs, the record, and the relevant law, we conclude that the district court applied the correct legal standards and that its factual findings were not clearly erroneous. Because the Plaintiffs were similarly situated, it would have been inconsistent with the FLSA to require 22 separate trials absent countervailing due process concerns that are simply not present here. *See Sandoz*, 553 F.3d at 919. The district court did not abuse its discretion in allowing the case to proceed as a collective action.

AFFIRMED.

---

[3] While asserting that the district court's rulings limiting its witness list and permitting an adverse inference argument resulted in unfairness, Rehab Synergies did not move for a new trial on either basis and has not appealed the district court's evidentiary ruling or jury instructions.