Mary Nell **BRUMBELOW**, Plaintiff-Appellant,

v.

**QUALITY MILLS, INCORPORATED** and **H. G. Baker**, Individually and as President of Quality Mills, Inc., Defendants-Appellees.

No. 72–1427
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 6, 1972.

Rehearing and Rehearing En Banc Denied Aug. 21, 1972.

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of

N.Y., 431 F.2d 409, Part I (5th Cir. 1970).

O. H. Williamson, Atlanta, Ga., for plaintiff-appellant.

Richard G. Tisinger, Tisinger & Tisinger, Carrollton, Ga., Richard N. Hubert, Atlanta, Ga., for defendants-appellees.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

This is a Fair Labor Standards Act case, 29 U.S.C. § 201 et seq., concerning the wages of a homeworker who assembled electric light pull cords in her home. For purposes of this appeal we accept the testimony of appellant that over an extended period of time and in order to maintain her job in the face of a company policy requiring minimum production of a certain number of units for an eight-hour day, she falsely reported to her employer that she completed the requisite units in eight hours when in fact it took her longer.[1] She now seeks compensation based on the extra hours.

Appellant picked up boxes of parts from the company and, after assembling them into pull cords, returned the finished products. She sued the company and its president, claiming unpaid minimum wages and overtime pay plus liquidated damages and attorney fees. In a jury trial the District Court granted a directed verdict for appellees. We affirm.

The Act does not prohibit industrial homework but authorizes the administrator to adopt regulations and orders "regulating, restricting, or prohibiting industrial homework" for prescribed reasons, 29 U.S.C. § 211(d). Nor does the Act forbid calculation of pay at a piece rate, so long as the resulting wage is no less than the minimum hourly rate (plus overtime, if applicable). We set out in the margin a portion of 29 C.F.R. § 516.31, prescribing data which the employer is required to maintain and preserve on each industrial homeworker employed.[2]

1. In some instances the number of units completed was less than the minimum production for an eight-hour day, and the number of hours reported as worked was less than eight. The same principles apply in both situations.

2. (b) *Items required.* Every employer shall maintain and preserve payroll or other records containing the following information and data with respect to each and every industrial homeworker employed by him (excepting those homeworkers to whom section 13(d) of the Act applies and those homeworkers in Puerto Rico to whom Part 545 or Part 681 of this chapter apply, or in the Virgin Islands to whom Part 695 of this chapter applies) :

(1) Name in full, and on the same record, the employee's identifying symbol or number if such is used in place of name on any time, work, or payroll records. This shall be the same as that used for Social Security purposes.

(2) Home address, including zip code,

(3) Date of birth if under 19,

(4) With respect to each lot of work:

(i) Date on which work is given out to worker, or begun by worker, and amount of such work given out or begun,

(ii) Date on which work is turned in by worker, and amount of such work,

(iii) Kind of articles worked on and operations performed,

(iv) Piece rates paid,

No assertion is made that the company failed to maintain and preserve the records, *vel non*, required of it. Rather the claim is based on the theory that the entries made in the records failed to correctly reflect the hours actually worked by appellant, which entries reflect the number of hours that appellant reported that she had worked.

The regulation, 29 C.F.R. § 516.31, also requires that "a separate handbook (to be obtained by the employer from the Wage and Hour Division and supplied by him to each worker) shall be kept for each homeworker. The information required therein shall be entered by the employer or the person distributing or collecting homework on behalf of such employer each time work is given out to or received from a homeworker." Handbooks were supplied to appellant, and we have examined those put in evidence. They reflect for each day the number of units completed and the hours worked, and for each week the total of "wages paid on lot[s]." As already noted, the information in the handbook is required to be entered by the employer when it gives work to, or receives work from, the homeworker. The employer's representative can, of course, verify by physical inspection the number of completed units received, but for the number of hours expended the employer is dependent upon the employee's stating to him a correct figure (subject to gross variations which experience would indicate were not correct, a matter discussed below). This employee acknowledges that regularly she reported hours worked not exceeding eight hours per day, or, where less than a full day was reported, a number of hours which would cause the amount paid her to equal or exceed the statutory minimum

hourly rate. But she testified that on many days, perhaps most days, she worked more than the hours shown, and she claims to be entitled to be paid accordingly, at the minimum rate where applicable and at overtime rates where applicable.

Reduced to its bare bones, the underpinning for her claim is that the Act places on the employer an obligation to keep and maintain records, including overtime worked by employees, which obligation may not be discharged by transferring to the employee the burden of keeping accurate records, *e. g.*, Wirtz v. Mississippi Publishers Corp., 364 F.2d 603, 607 (5th Cir. 1966). The employer, according to appellant's testimony having failed to correctly record the actual hours she worked, she claims recovery on the basis of her approximation of actual hours. The employer's obligation to keep records may not be the basis for liability in this instance.

From prior experience the company had developed a piece work norm of the number of assembled units which a homeworker could produce in an eight-hour day, and President Baker was frank to say that he would not keep on the payroll a worker who found it necessary to work overtime to complete the norm. Appellant explained that she consistently under-reported hours worked because she recognized that the alternative would be the loss of her job.

The company came forward with substantial evidence explaining how the requisite minimum production had been formulated and that it was both achievable and achieved by its homework employees. There was testimony from several witnesses, including persons doing the same work as appellant, that regu-

(v) Hours worked on each lot of work turned in,
(vi) Wages paid for each lot of work turned in,
(vii) Deductions for Social Security taxes,
(viii) Date of wage payment and pay period covered by payment,
(5) With respect to each week:

(i) Hours worked each week,
(ii) Wages earned for each week at regular piece rates,
(iii) Extra pay due each week for overtime worked,
(iv) Total wages earned each week,
(v) Deductions for Social Security taxes,

larly they could and did produce the required number of units. Appellant's only admissible evidence to the contrary was her own statement that she was not able to meet the norm.

■ The fact that the employer utilizes a minimum required production is not alone enough to impose employer liability to an industrial homeworker who, in order to maintain her job, understates the number of hours worked. The regulations recognize that piece rates are permissible, subject to attainment of the hourly minimum wage. There is no evidence that this employer's norm was not being achieved by workers in general or that the employer otherwise knew or should have known that it was not achievable by workers in general or this worker in particular. There was no evidence that the employer required the entry of false reports of hours worked, but rather appellant concedes that no supervisory person, including Baker, the one-man management for the company, ever told her to do so. There is no evidence that the company in any manner encouraged workers to falsely report (unless we were to infer an illegal or improper encouragement from the mere existence of a norm, which we decline to do), and no evidence that it knew or should have known that appellant, unable to perform up to the employer's standard, was giving false information to conceal that fact in order to hold on to her job.

■ On the narrow facts of this case, the court correctly granted a directed verdict on the basis that the appellant was estopped and could not profit from her own wrong in furnishing false data to the employer. Walling v. Woodruff, 49 F.Supp. 52 (M.D.Ga.1942); Mortenson v. Western Light & Telephone Co., 42 F.Supp. 319 (S.D.Iowa, 1941). *See also* Dollar v. Caddo River Lumber Co., 43 F.Supp. 822 (W.D.Ark.1941).

Wirtz v. Carolina Company, 255 F. Supp. 417 (M.D.N.C.1966), is not contrary to what we decide but demonstrates how the result may differ with other facts. In that case there was a change from piece work to hourly basis which the court found was "more theoretical than real." Most of the homeworkers understood that to retain their employment they must conform to the minimum production schedule, but also they understood that they should record no more hours worked than would show attainment of the required volume. Most of the workers who testified had made no attempt to report correctly the hours worked. The handbooks were inadequate and incomplete, and the entries contained nothing more than rough calculations made by the homeworkers with the objective of meeting minimum production requirements. The court found that the employer knew or had reason to believe that the reported information was inaccurate. Those factors are not present in the case before us.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.