[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11747
_____

D.C. Docket No. 1:13-cv-01470-MHS

SANTONIAS BAILEY,

Plaintiff-Appellant,

versus

TITLEMAX OF GEORGIA, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 15, 2015)

Before MARTIN and ANDERSON, Circuit Judges, and COTE,[*] District Judge.

MARTIN, Circuit Judge:

_____

[*] Honorable Denise Cote, United States District Judge for the Southern District of New York, sitting by designation.

Santonias Bailey was an employee of TitleMax of Georgia who worked overtime hours for which he was not paid.  At the direction of his supervisor, who told him that TitleMax did not pay overtime, he regularly worked off the clock.  The same supervisor also repeatedly edited Mr. Bailey's time records to report fewer hours than he worked.  Mr. Bailey eventually brought suit under the Fair Labor Standards Act, which requires employers to pay their employees for overtime.

This appeal presents the question of whether TitleMax may defeat Mr. Bailey's FLSA claim by deflecting the blame for the unpaid overtime onto him.  TitleMax insists that Mr. Bailey is responsible for any unpaid overtime, because he could have complained about his supervisor, but did not.  Neither did he follow TitleMax's policies for ensuring accurate time records.  In legal terms, the question is this: if an employer knew its employee underreported his hours, can it still assert equitable defenses based on the employee's own conduct in underreporting as a total bar to the employee's FLSA claim?  We have heard oral argument, read the parties' briefs, and examined the record in considering the question.  Our answer is no.  Because the District Court answered yes, we reverse its grant of summary judgment for TitleMax.

2

## I.

Mr. Bailey worked at a TitleMax store in Jonesboro, Georgia for about a year. We assume, as the District Court did, that Mr. Bailey worked overtime hours for which he was not paid.[1] He was not paid because his time records were not accurate. They reflected an artificially low number of hours worked. This inaccuracy came from two sources: first, Mr. Bailey underreported his own hours by working off the clock. Second, Mr. Bailey's supervisor changed his time records to decrease the number of hours he reported.

Mr. Bailey's supervisor told him that TitleMax "does not allow overtime pay," and that "[t]here [would] be days that [they] [would] be working off the clock." To that end, Mr. Bailey would, "for the most part," clock in and out when his supervisor told him to, even though that sometimes did not match up with the hours he actually worked. For example, on some Saturdays, he would work from 8:30 A.M. to 5:30 P.M. But his supervisor would tell him: "your hours are . . . high, so make sure that you clock in at 9:00 and clock out at 4:00." And so he would, logging only seven hours despite working nine.

Second, Mr. Bailey's supervisor herself edited Mr. Bailey's time records. To take two examples: on September 9, 2011, Mr. Bailey clocked in at 10:57 A.M.

---

[1] In reviewing the District Court's grant of summary judgment for TitleMax, we construe the facts in the light most favorable to Mr. Bailey and draw all reasonable inferences in his favor. See Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

3

and clocked out at 7:17 P.M., without recording any lunch break.  His supervisor later changed his clock-out time to 7:00 P.M. and added a lunch break from 1:00 P.M. to 2:00 P.M.  And on September 12, his supervisor edited Mr. Bailey's clock-out time, changing it from 8:03 P.M. to 7:03 P.M.  After he resigned from TitleMax, Mr. Bailey filed suit.  He claims that TitleMax violated the FLSA by failing to pay overtime as the statute requires.

For its part, TitleMax emphasizes that Mr. Bailey's conduct violated its policies.  When he worked off the clock, he violated a policy requiring accurate reporting of hours.  Also, by neither objecting to his supervisor changing his time records nor reporting inaccuracies in his records, Mr. Bailey violated a policy requiring regular verification of time.  Finally, by not reporting any of this, he violated a policy instructing employees who had a problem at work to notify a supervisor, or if the supervisor was part of the problem, to inform a higher-level manager or call an anonymous employee hotline.  Mr. Bailey was aware of each of these company policies.

In the face of Mr. Bailey's law suit, TitleMax moved for summary judgment. It pointed to Mr. Bailey's violation of its policies and argued that he was responsible for any unpaid overtime.  It said that because Mr. Bailey bore responsibility, two equitable defenses—unclean hands and in pari delicto—barred

4

his claim.  The District Court agreed, and granted summary judgment.  This appeal followed.

## II.

We review <u>de novo</u> the District Court's grant of summary judgment. <u>Josendis v. Wall to Wall Residence Repairs, Inc.</u>, 662 F.3d 1292, 1314 (11th Cir. 2011).  We apply the same legal standards as the District Court.  <u>Centurion Air Cargo</u>, 420 F.3d at 1149.  Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.

## A.

The FLSA requires employers to pay their employees at least one and a half times their regular wage for every hour worked in excess of forty per week.  29 U.S.C. § 207(a)(1).  Nearly seventy years ago, the Supreme Court wrote that the "the prime purpose" of the FLSA is "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage."  <u>Brooklyn Sav. Bank v. O'Neil</u>, 324 U.S. 697, 707 n.18, 65 S. Ct. 895, 902 n.18 (1945).  The Court explained that Congress passed this law as

> a recognition of the fact that due to the unequal bargaining power as
> between employer and employee, certain segments of the population

5

required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

Id. at 706–07, 65 S. Ct. at 902.

This Court has, in the decades since O'Neil, echoed the same principle: the goal of the FLSA is to counteract the inequality of bargaining power between employees and employers. See, e.g., Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1332 (11th Cir. 2014) (quoting O'Neil); Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004) (same); Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352 (11th Cir. 1982) ("Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory."); Mayhue's Super Liquor Stores, Inc. v. Hodgson, 464 F.2d 1196, 1197 n.1 (5th Cir. 1972) (quoting O'Neil).[2]

In the broadest sense, this principle has guided the rulings of this Circuit, and it compels our holding here. If an employer knew or had reason to know that its employee underreported his hours, it cannot escape FLSA liability by asserting equitable defenses based on that underreporting. To hold otherwise would allow an employer to wield its superior bargaining power to pressure or even compel its

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981. Id. at 1209.

employees to underreport their work hours, thus neutering the FLSA's purposeful reallocation of that power.

B.

If an employee has worked overtime without pay, he may bring a private FLSA action for damages.  See 29 U.S.C. § 216(b).  An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work.  Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1314–15 (11th Cir. 2007).  Knowledge may be imputed to the employer when its supervisors or management "encourage[] artificially low reporting."  See id. at 1319; Brennan v. Gen. Motors Acceptance Corp., 482 F.2d 825, 828 (5th Cir. 1973) ("The company cannot disclaim knowledge when certain segments of its management squelched truthful responses.").  Cf. Reich v. Dep't of Conservation & Natural Res., State of Ala., 28 F.3d 1076, 1082 (11th Cir. 1994) ("The cases must be rare where prohibited work can be done and knowledge or the consequences of knowledge avoided." (alteration adopted) (quoting Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508, 512 (5th Cir. 1969))).

Mr. Bailey has shown both required elements.  He worked overtime without pay.  TitleMax knew or should have known he worked overtime, because Mr. Bailey's supervisor both encouraged artificially low reporting and squelched

7

truthful timekeeping. She did the former by explicitly instructing Mr. Bailey to underreport his time by working off the clock. And she did the latter by herself changing Mr. Bailey's time records to show fewer hours worked.

This would ordinarily be the end of the inquiry. Establishing both elements (or, more precisely, a genuine dispute of fact as to both elements) is generally sufficient for an employee to survive an employer's summary-judgment motion. But TitleMax advanced in the District Court (and presses on appeal) a somewhat novel argument. It insists that, while Mr. Bailey may have established the elements of his claim, TitleMax is nevertheless entitled to summary judgment based on two equitable defenses: unclean hands and in pari delicto.

These two defenses are similar. See Greene v. Gen. Foods Corp., 517 F.2d 635, 646–47 (5th Cir. 1975) (discussing in pari delicto and other "closely related equitable defenses such as . . . unclean hands"). Broadly speaking, proof of either of these defenses may operate to bar a plaintiff's claim in an appropriate case if he bears responsibility for his own injury. Each gives force to the well-worn maxim: "[h]e who comes into equity must come with clean hands." See Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 241, 54 S. Ct. 146, 146 (1933).

To assert an unclean hands defense, a defendant must show that (1) the plaintiff's wrongdoing is directly related to the claim, and (2) the defendant was personally injured by the wrongdoing. See Calloway v. Partners Nat'l Health

8

Plans, 986 F.2d 446, 450–51 (11th Cir. 1993).  Similarly, to assert an in pari delicto defense, a defendant must show that "the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress."  Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1308 (11th Cir. 2013).  To invoke in pari delicto to bar a claim brought under a federal statute, the defendant must also show a second element: that barring the suit would not "substantially interfere" with the policy goals of the statute.  Id.

C.

The District Court accepted TitleMax's argument that one or both of these defenses may bar an employee's FLSA claim, even when the employer knew that the employee was underreporting his hours.  In doing so, the District Court did not correctly apply the statute.

Our conclusion in this regard is consistent with two cases previously decided in this Circuit.  In Allen and Brennan, we faced similar facts and rejected arguments similar to those made by TitleMax.  In both of those cases, employers nominally required employees to accurately report their hours.  See Allen, 495 F.3d at 1314; Brennan, 482 F.2d at 827.[3]  Despite those requirements, supervisors encouraged employees to underreport, and they did.  See Allen, 495 F.3d at 1318 (supervisor told employee "that she could not continue to be paid overtime");

---

[3] In Allen, as here, the employer also instructed its employees on "how to report a problem with their time cards or paychecks."  495 F.3d at 1314.

9

Brennan, 482 F.2d at 827 (supervisors exerted "pressure" and "insisted that reported overtime hours be kept to a stated minimum level").

Facing FLSA claims, the employers argued they could not be responsible for unpaid overtime because they had neither actual nor constructive knowledge that the employees had worked unpaid overtime. Allen, 495 F.3d at 1318; Brennan, 482 F.2d at 827. This court rejected the argument in both cases, and imputed knowledge to the employers. Allen, 495 F.3d at 1318–19; Brennan, 482 F.2d at 827. The Brennan panel concluded that the supervisors had at least constructive knowledge of unpaid overtime because "they had the opportunity to get truthful overtime reports but opted to encourage artificially low reporting instead." 482 F.2d at 828. And the Allen panel decided that a supervisor had knowledge based on even more tenuous facts: she "was aware that [the employee] was working overtime hours" and was also "aware that [the employee] had been told that she could not be paid overtime." 495 F.3d at 1318. Both panels ruled that knowledge on the part of supervisors could be imputed to the employers. See id. at 1319 ("[O]ur predecessor court stated that when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." (quoting Brennan, 482 F.2d at 828)).

The facts of Mr. Bailey's case are substantially the same. TitleMax instructed its employees to accurately record their hours and to report problems

10

with their records.  Mr. Bailey worked off the clock at the behest (demand) of his supervisor, in violation of those policies.  No one disputes that his supervisor knew he was working off the clock.  The supervisor's knowledge may be imputed to TitleMax, making it liable for the FLSA violation.  This is the holding of Allen and Brennan.     It is true that TitleMax presents its argument in different terms than the employers in Allen and Brennan.  TitleMax does not claim that the supervisor did not know that Mr. Bailey was underreporting his hours.  See Allen, 495 F.3d at 1318 ("The [employer] claims that even if unpaid hours can be shown, Plaintiffs cannot demonstrate that their supervisors knew that they were working overtime without pay."); Brennan, 482 F.2d at 827 ("[The employer]'s principal argument is that it cannot have violated the FLSA because it had no knowledge of the unreported overtime.").  Nor could it.  Instead, TitleMax says that Mr. Bailey's misconduct allows it to assert an equitable defense.  Specifically, TitleMax argues that Mr. Bailey's own misconduct makes Allen and Brennan inapposite.  But we see this distinction as one without a difference.  TitleMax seeks to skirt the clear holdings of Allen and Brennan by making the same argument under a different name.  Whether we consider the employee's actions in analyzing the knowledge prong of the FLSA or as an equitable defense, the question is the same: is an employee deprived of his FLSA claim because he underreported his time, even if knowledge of the underreporting is imputed to the employer?  Allen and Brennan

11

say no.  TitleMax asks us to contravene those holdings under a different theory.  We cannot oblige.

TitleMax has identified no case in which this Court approved the use of equitable defenses as a total bar to an employee's FLSA claim when the employer knew the employee underreported his hours.[4]  Neither has TitleMax identified any such case from the United States Supreme Court or any of our sister Circuits.  We are aware, of course, that the absence of evidence is not necessarily evidence of absence.  But the FLSA has been on the books a long time.

Congress enacted the FLSA in 1938.  See Fair Labor Standards Act of 1938, Pub. L. No. 75-718, 52 Stat. 1060.  And federal courts are no stranger to FLSA suits: in fiscal year 2012 alone, over eight thousand FLSA lawsuits were filed in the District Courts.  See U.S. Gov't Accountability Office, Fair Labor Standards Act: The Department of Labor Should Adopt a More Systematic Approach to Developing Its Guidance 6–7 (Dec. 18, 2013), http://www.gao.gov/assets/660/659772.pdf.  In the context of such a well-worn federal statute, the dearth of precedent supporting TitleMax's novel argument is

---

[4] TitleMax cites to Lamonica, 711 F.3d 1299, an FLSA case in which we discussed, but did not apply, the in pari delicto defense.  Indeed, we specifically declined to "determine whether the in pari delicto defense is consistent with the policies underlying the FLSA."  Id. at 1308.  We did so because the employer had not shown the first part of that defense: that the employee bore at least substantially equal responsibility for the FLSA violation.  See id.  Because the first element was not met, we saw no reason to address the second element, which requires a court to decide whether applying the defense to bar a claim under a federal statute would "substantially interfere with the statute's policy goals."  Id.  Thus, we did not, as TitleMax suggests, apply in pari delicto to an FLSA claim in Lamonica.

12

persuasive, if not conclusive, evidence that its argument is misguided.  Cf. 2 The

Fair Labor Standards Act § 18.V.E.2, at 18-126 (Ellen C. Kearns ed., 2d ed. 2010)

("[I]naccurate reporting of working hours alone will not necessarily cause a court

to estop an employee's claim, if the employer knew or should have known that the

reported hours were inaccurate."); id. at 18-126 n.508 (collecting cases, including

Allen).

TitleMax does point to Brumbelow v. Quality Mills, Inc., 462 F.2d 1324

(5th Cir. 1972), a case in which our predecessor Court applied an equitable defense

based on an employee's underreporting to bar her FLSA action.  But that case is

different from this one on the key fact which is the basis of our holding: here the

supervisor encouraged and participated in the underreporting, so TitleMax knew or

had reason to know that the employee was underreporting.  See Allen, 495 F.3d at

1319 ("[W]hen an employer's actions squelch truthful reports of overtime worked,

or where the employer encourages artificially low reporting, it cannot disclaim

knowledge.").  By contrast, in Brumbelow we found "no evidence that [the

employer] knew or should have known that appellant . . . was giving false

information" about the number of hours worked.  462 F.2d at 1327.  The employee

in Brumbelow underreported her hours on her own accord; she admitted that "no

supervisory person . . . ever told her to do so."  Id.  The supervisor's actions here—

instructing Mr. Bailey to underreport and affirmatively ensuring he did so by

13

editing his time records—went far beyond <u>Brumbelow</u>.  Here, the supervisor's actions imputed knowledge to TitleMax that could not be imputed in <u>Brumbelow</u>.

We finally note that our holding is consistent with the Supreme Court's reasoning in a similar case.  In <u>McKennon v. Nashville Banner Publishing Co.</u>, 513 U.S. 352, 115 S. Ct. 879 (1995), an employer sought to defeat an Age Discrimination in Employment Act claim by raising a defense based on the employee's misconduct.  The Supreme Court explained that the ADEA has a deterrent purpose, and that private actions vindicate that deterrent purpose by "disclos[ing] patterns of noncompliance" by employers.  <u>Id.</u> at 359, 115 S. Ct. at 885.  Totally barring actions based on employee misconduct "would not accord with [the statutory] scheme."  <u>Id.</u>  The Court held that, while defenses based on employee misconduct should not act as a total bar in these circumstances, the misconduct may still be relevant to deciding "the specific remedy to be ordered." <u>Id.</u> at 358, 115 S. Ct. at 884.

Like the ADEA, the FLSA has a deterrent purpose.  <u>See</u> <u>O'Neil</u>, 324 U.S. at 709–10, 65 S. Ct. at 903 ("To permit an employer to secure a release from the worker . . . will tend to nullify the deterrent effect which Congress plainly intended that [the FLSA] should have."); <u>Nall v. Mal-Motels, Inc.</u>, 723 F.3d 1304, 1307 (11th Cir. 2013) ("Allowing the employer to escape liquidated damages by simply giving an employee the wages she was entitled to earn in the first place—or in

14

some cases, less than that—would undermine the deterrent effect of the [FLSA's] statutory provisions."). Cf. McKennon, 513 U.S. at 357, 115 S. Ct. at 884 ("The ADEA . . . contains a vital element found in both Title VII and the Fair Labor Standards Act: It grants an injured employee a right of action to obtain the authorized relief. The private litigant who seeks redress for his or her injuries vindicates both the deterrence and the compensation objectives of the ADEA." (citation omitted)).

Barring FLSA actions for wage and overtime violations where the employer is aware that an employee is underreporting hours would undermine the Act's deterrent purpose. In this case, the District Court applied equitable defenses based on Mr. Bailey's misconduct to totally and entirely bar his FLSA claim. When it did that, it went beyond what the Supreme Court approved in McKennon, thereby interfering with the FLSA's statutory scheme.[5]

---

[5] Because the question is not before us, we do not hold that equitable defenses based on employee misconduct may in fact limit remedies in private FLSA actions. While McKennon held that such defenses may limit relief under the ADEA, the Court rested its reasoning on the fact that the ADEA provides both equitable and legal remedies. See McKennon, 513 U.S. at 361, 115 S. Ct. at 886 ("The [ADEA] provides that 'the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for [amounts owing to a person as a result of a violation of this chapter].'" (emphasis added) (quoting 29 U.S.C. § 626(b))). In private FLSA actions, however, courts are empowered to grant only legal relief. See Bailey v. Gulf Coast Transp., Inc., 280 F.3d 1333, 1335 (11th Cir. 2002) ("For violations of the wage and overtime provisions, the FLSA does not list equitable relief as an available remedy in an employee suit."). Whether the McKennon holding—based on a statute that provides legal and equitable relief—also applies to a statute that provides only legal relief is a question for another day.

15

IV.

Where, as here, an employer knew or had reason to know that its employee underreported his hours, it cannot invoke equitable defenses based on that underreporting to bar the employee's FLSA claim.  We reverse the District Court's grant of summary judgment and remand for further proceedings.

**REVERSED** and **REMANDED**.