[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12751
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cv-81696-DMM


PATRICIA GONZALEZ,

Plaintiff-Counter Defendant-
Appellant,


LESHA ROSARIO,

Plaintiff-Appellant,

versus

JAMES BATMASIAN,
MARTA BATMASIAN,
each individually and d.b.a. Investments Limited,

Defendants-Counter Claimants-
Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 23, 2018)

Before WILLIAM PRYOR, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Lesha Rosario appeals from the district court's grant of judgment as a matter of law in favor of her employers, defendants James Batmasian and Marta Batmasian, in Rosario's action for unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq.  Plaintiff Rosario argues that the district court erred in granting judgment as a matter of law in favor of the defendants, and that the district court abused its discretion in not continuing the trial into a fourth day (Thursday) where Rosario was not present for the first three days of trial and her counsel had concluded his witnesses (other than Rosario) before lunch on Wednesday.  After review, we affirm.

## I.    BACKGROUND

### A.    The FLSA Action

In October 2016, plaintiff Rosario and co-plaintiff Patricia Gonzalez filed this FLSA action against defendants James and Marta Batmasian.  The complaint alleged that Rosario and Gonzalez worked as a legal assistant and a property

2

manager, respectively, for the defendants' real estate business, elsewhere identified as Investments Limited. The plaintiffs alleged they were not paid overtime wages to which they were entitled, and that they were regularly instructed to work "off of the clock"—that is, without recording their hours—so that the defendants could avoid paying overtime.

The complaint asserted one claim for recovery of lost overtime wages, liquidated damages, compensatory damages, and attorney's fees. As litigation progressed, it became clear that the key issues were (1) whether plaintiff Rosario, a paralegal, had actually worked the "off of the clock" hours she claimed to have worked, and (2) whether co-plaintiff Gonzalez, a property manager, was exempt from overtime pay under the administrative or executive exemptions of the FLSA.

## B.    Scheduling Issues During Pretrial Proceedings

Very early in the litigation, on October 19, 2016, the district court scheduled the jury trial to take place "during the two-week trial period commencing May 1, 2017 at 9:00 a.m., or as soon thereafter as the case may be called." The district court scheduled a calendar call for April 26, 2017.

The parties proceeded with discovery. Plaintiff Rosario's deposition was scheduled for Tuesday, February 7, 2017. The day before the deposition, plaintiffs' counsel, Chris Kleppin, informed the defendants that Rosario would be unable to attend. On February 27, the defendants moved to dismiss Rosario's

3

claim for failure to prosecute, citing, among other things, her failure to appear at her deposition. The district court denied the motion to dismiss. Rosario was eventually deposed on April 25, 2017.

On April 20, 2017, the plaintiffs moved to have the trial held on the second week of the trial calendar—the week of May 8—to allow the plaintiffs additional time to depose one witness. On April 24, 2017, the district court denied the motion and ordered the parties to be available for the entire two-week trial period, which began on May 1.

The calendar call took place on April 26, 2017. The district court expressed doubt initially as to "why this case takes four or five days," in light of the relatively straightforward claims and the narrow issues of disputed fact. Counsel for both parties explained that ancillary issues would arise at trial. However, counsel for the defendants stated that "the only thing I'm defending on is the basis that [co-plaintiff] Gonzalez was administratively or executively exempt [from overtime] and that [plaintiff] Rosario did not work off the clock as she claims."

Considering the limited scope of the trial, the district court advised that "we will try to move pretty quickly, and you need to have people available. We are not going to wait for people." The district court told the parties to be ready to start trial at 9:00 on Monday, May 1, stating:

> Nine o'clock Monday, you need to be ready to move
> quickly. If you settle, let us know right away. It affects

4

other matters, and we will try—I think we can finish this case in three days, but we will see. If we have to take four, we will; but let's try to talk to each other, and let's be more precise with the jury when they come in about how much time we are going to take of theirs.

Plaintiffs' attorney Kleppin responded, "Yes, sir."

## C.    Plaintiff Rosario's Absence from Trial

The trial began as scheduled on Monday, May 1, 2017. Plaintiff Rosario was not present. During voir dire, the district court, after conferring with the parties, informed the jurors that the trial was expected to last no more than four days, and thus would conclude no later than Thursday, May 4. The district court had allotted two days for the plaintiffs' case, and Wednesday and Thursday for the defendants' case, jury charge, and deliberation. On several occasions throughout the first day of trial, the district court urged plaintiffs' attorney Kleppin to "move forward."

On Tuesday morning (the second day of trial), the district court admonished attorney Kleppin that he was "moving pretty slowly" and that he needed to put his case on that day, stating:

> I did want to mention, Mr. Kleppin, if you have evidence significant to your case, you ought to put it on. You are moving pretty slowly . . . . This afternoon will mark the halfway—at the end of the day, will be the halfway point of the case. Barring some agreement with Counsel, you need to put your case on today.

Attorney Kleppin agreed to move more quickly.

5

At the beginning of the afternoon on the second trial day, the district court, addressing attorney Kleppin, expressed its "worry that you are going to run out of time without finishing your clients," because "[y]ou basically have three hours and 15 minutes—about three hours left." The district court then asked about plaintiff Rosario's whereabouts. This exchange followed:

> MR. KLEPPIN: [Rosario] is out of town and has made arrangements to be here Thursday morning, first thing. That is the soonest I could get her here.
>
> THE COURT: Well, she may be out of luck, and I don't understand that. This case was set, and for her— Thursday is the last day of trial and it would be in [the defendants'] case.

Although attorney Kleppin said Rosario was coming Thursday, the district court warned that she "may be out of luck" and that Thursday would be the defendants' case.

At the end of Tuesday (the second trial day) and after the jury was excused, the district court asked attorney Kleppin about "the situation with Ms. Rosario." Kleppin explained that plaintiff Rosario had childcare and work-related issues which prevented her from coming to court before Thursday morning. However, attorney Kleppin assured the district court: "I'm not saying I want to drag my case out until Thursday morning to try to get her in. I'm happy to rest well before then."

6

The district court reminded Kleppin that he had been instructed to finish presenting his case by the end of that day, Tuesday. Nevertheless, the district court allowed attorney Kleppin to resume his witnesses and case the next morning, Wednesday. However, the district court advised: "I'm going to look at this issue with Rosario. I don't understand why she is not prosecuting her case. This is a lot of failures, in terms of a case."

On Wednesday morning (the third day of trial), the district court ordered attorney Kleppin to "finish [his] case by the midmorning break." Kleppin asked if he could have until noon, asserting that he could present his remaining witnesses by that time. The district court refused, explaining that the whole trial needed to conclude the next day (Thursday) and that the plaintiffs' case had already taken more than its share of time. The district court noted that although it had addressed the pacing of the trial "at calendar call, the beginning of the case, yesterday morning, [and] yesterday at 5:00 o'clock," attorney Kleppin had never made clear that his case would last into the third day of trial.

At the midmorning recess on Wednesday, attorney Kleppin asked to "preserve an objection with respect to Ms. Rosario." Notably, Kleppin did not ask the district court to prolong the trial to allow Rosario to testify; rather, Kleppin said he "realize[d] this thing is likely to go to the jury today and maybe even get a verdict today." Kleppin did, however, explain again that plaintiff Rosario had

7

great difficulty attending the trial due to personal circumstances.  Kleppin told the district court he had considered a motion to have Rosario appear by video conferencing, but he acknowledged it was "way too late now to arrange all of that."

The district court responded to attorney Kleppin's objection: "I appreciate that you are having problems with her; but, on the other hand, there are ways to have dealt with that."

The plaintiffs presented their remaining witnesses, other than plaintiff Rosario, on Wednesday morning.[1]  The defendants presented their only witness, defendant Marta Batmasian, on Wednesday morning as well.  Both parties rested before the lunch recess.

## D.    The Motion for Judgment as a Matter of Law and the Conclusion of Trial

After the jury retired for lunch on Wednesday, the defendants moved for judgment as a matter of law as to both plaintiffs.[2]  In response, plaintiffs' attorney Kleppin, with respect to the case of plaintiff Rosario, "reincorporate[d] the argument that [he] made previously" regarding Rosario's difficulties in attending the trial.  Kleppin acknowledged that, because plaintiff Rosario had never attended

---

[1]Rosario's complaint involved overtime during 2010-2012.  Rosario's counsel had one additional witness, who had no dealings with the plaintiffs and no dealings with the defendants' company since 2004.  The district court excluded his testimony.  There is no issue in Rosario's appeal as to this witness.

[2]The defendants used the term "directed verdict" rather than judgment as a matter of law.

8

the trial, he had not "presented the sort of proof that you would need in an FLSA case," although he also cited witness James Baker's testimony regarding cash payments.

Ruling on the motion, the district court noted first that "Ms. Rosario did not appear for trial. She has had previous problems in appearing for deposition." The district court continued:

> [T]he defendants have presented evidence of her pay, that she was paid overtime. They have computer records that are generated, according to the testimony, automatically with respect to her time. There is no evidence that she exceeded that time.

The district court acknowledged witness James Baker's testimony, but concluded that the testimony was "far short of establishing some entitlement on the part of Ms. Rosario to overtime." The district court concluded: "I'm going to grant the defendants' motion as to Ms. Rosario."

The district court denied the motion for judgment as a matter of law as to co-plaintiff Gonzalez. Accordingly, on Wednesday afternoon, the parties presented their closing arguments on Gonzalez's claim to the jury. After closing arguments, the district court charged the jury. The jury retired at approximately 3:00 pm. Just over an hour later, the jury returned a verdict in favor of co-plaintiff Gonzalez, awarding her $36,939 in unpaid overtime. The trial adjourned at 4:21 on Wednesday afternoon.

9

On May 17, 2017, the district court entered a written order memorializing its previous grant of judgment as a matter of law against plaintiff Rosario.  The written order provided: "As the Court explained on the record, Rosario failed to prosecute her case against Defendants by not appearing at trial.  Accordingly, judgment against Rosario is warranted."  That same day, the district court entered final judgment in favor of Gonzalez in the amount of $73,878, consisting of the jury's award of $36,939 in unpaid overtime and an additional $36,939 in liquidated damages.

Plaintiff Rosario now appeals.[3]  We discuss first whether the district court abused its discretion in not continuing the trial to Thursday.  Then we review the evidence counsel for plaintiff Rosario did present and whether the district court erred in granting judgment as a matter of law against plaintiff Rosario.

## II.    THE DISTRICT COURT'S DENIAL OF A CONTINUANCE

We review for abuse of discretion a district court's decision regarding a continuance.  Romero v. Drummond Co., Inc., 552 F.3d 1303, 1313-14 (11th Cir. 2008).  The denial of a request for a continuance does not constitute an abuse of

---

[3]The notice of appeal was actually filed on behalf of both plaintiff Rosario and co-plaintiff Gonzalez.  However, in a footnote, the plaintiffs made clear that with respect to co-plaintiff Gonzalez, the appeal was "really a Cross Appeal."  Co-plaintiff Gonzalez, who had prevailed in the district court, wished only to "preserve all of her rights" in the event the defendants appealed from the final judgment.  In any event, the appellant's brief in this appeal was submitted only on behalf of plaintiff Rosario.

Co-plaintiff Gonzalez has since filed a separate appeal from the final judgment, which is proceeding as Appeal No. 17-13740.  Nothing herein relates to that appeal.

10

discretion unless it is "arbitrary and unreasonable and severely prejudices the moving party." Sec. and Exch. Comm'n v. Levin, 849 F.3d 995, 1001 (11th Cir. 2017).

In determining whether a denial of a continuance constitutes an abuse of discretion, we consider four factors: (1) the moving party's diligence in case preparation; (2) the likelihood that granting the continuance would have remedied the need for it; (3) the level of inconvenience the court and the opposing party would have experienced had the continuance been granted; and (4) the harm that the moving party suffered. Romero, 552 F.3d at 1320. With respect to the second factor, "[i]t is well-settled that a district court may deny a continuance when there is no guarantee that granting one will enable a party to secure the crucial testimony." Id. at 1320-21.

As an initial matter, we note that the plaintiffs did not formally move for a continuance. To the contrary, attorney Kleppin stated that he would be "happy to rest well before" Thursday morning, when plaintiff Rosario was said to be available to testify. And on Wednesday morning, when Kleppin raised his final objection regarding Rosario, he conceded that the case would likely conclude that same day.

However, to the extent plaintiffs' counsel requested more time for Rosario to appear, the district court did not abuse its discretion in denying the request. We

11

look to the <u>Romero</u> factors.  <u>Romero</u>, 552 F.3d at 1320.  Admittedly, the fourth <u>Romero</u> factor argues in favor of granting the continuance: without Rosario's testimony, her case was effectively gutted, so she was harmed when the district court did not continue the trial over to Thursday.  The other three factors, however, amply support the district court's action.

First, plaintiff Rosario was not diligent in prosecuting her case.  She never attended the trial, despite knowing as early as October 19, 2016 that it would take place during the two-week period beginning May 1, 2017.  This amounts to more than six months of notice.  Furthermore, the district court confirmed on April 24, 2017 that the parties were to be available for the entire trial period; and, on April 26, 2017, the district court set the trial for the week of May 1, 2017. Plaintiff's counsel said it was difficult for Rosario to attend the trial.  But, as the district court noted, "there are ways to have dealt with that," especially considering the amount of notice of the trial date she was given.

Second, there was no guarantee that a one-day continuance would have enabled attorney Kleppin to "secure the crucial testimony."  See <u>Romero</u>, 552 F.3d at 1320-21.  Rosario did not tell the defendants she would be unable to attend her deposition until the day before the deposition.  A similar last-minute conflict may well have arisen for Rosario, which would have prevented her from attending and testifying even if a continuance had been granted.

12

Third, given that the entire case and jury verdict were completed by 5:00 on Wednesday afternoon, a continuance would have inconvenienced the district court, and jury, and the defendants. The defendants presented their entire case on Wednesday. It would have been unfair to tell defense counsel, after the close of his case, that the chief witness for the plaintiffs would now be testifying the next day. It may also have inconvenienced the district court and confused the jury to have the plaintiffs' case presented in a piecemeal manner.

In sum, applying the <u>Romero</u> factors, and given the fact that Rosario had not appeared for the first three days of her trial, we conclude that the district court's ruling was not arbitrary or unreasonable as to constitute an abuse of discretion. <u>Romero</u>, 552 F.3d at 1320; <u>Levin</u>, 849 F.3d at 1001.

### III.    JUDGMENT AS A MATTER OF LAW

Having concluded that the district court did not abuse its discretion in declining to prolong the trial, we must now consider whether judgment as a matter of law as to plaintiff Rosario was appropriate.

We review <u>de novo</u> a district court's grant of judgment as a matter of law, and we apply the same standards as the district court. <u>Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs</u>, 162 F.3d 653, 656 (11th Cir. 1998). Thus, in evaluating a defendant's motion for judgment as a matter of law, we must consider all evidence in the light most favorable to the plaintiff and grant the plaintiff the benefit of all

reasonable inferences.  Id.  We may affirm a grant of judgment as a matter of law only if the facts and inferences "point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict."  Id. (quotations omitted).

## A.     FLSA

The FLSA requires employers to pay covered employees for hours worked in excess of forty hours per week at one and one half times the employees' regular pay rate.  29 U.S.C. § 207(a)(1).  An employee bringing a private action for unpaid overtime must establish two elements: (1) that she worked unpaid overtime; and (2) that the employer knew or should have known of the overtime work.  Bailey v. TitleMax of Georgia, Inc., 776 F.3d 797, 801 (11th Cir. 2015).

## B.     Evidence Presented by Plaintiff Rosario's Counsel

The evidence to support Rosario's claim was as follows.  James Baker, the former controller of Investments Limited, testified that he had seen defendant James Batmasian, as well as Jason Lazar, the company's general counsel, make cash payments to plaintiff Rosario.  Baker testified that this was "[s]o that [Batmasian] wouldn't have to pay overtime, that the overtime wasn't on the books."  And Jason Lazar, the general counsel, testified that on occasion plaintiff Rosario was given vouchers or gift cards to local businesses.

14

The defense presented more extensive evidence to refute Rosario's overtime claim. Among other things, James Batmasian testified on cross-examination that he had never paid plaintiff Rosario in cash, and that his employees were always paid for overtime. On cross-examination and on redirect, Jason Lazar testified that he was not aware of plaintiff Rosario ever being paid in cash, and that the gift cards were "a perk" rather than compensation.

The primary evidence for the defense was the testimony of defendant Marta Batmasian. Marta Batmasian testified that she "[knew] distinctly [Rosario] didn't work the hours she claimed," calling Rosario's claim "an incredible lie." Rather, Marta testified, plaintiff Rosario regularly arrived late to work in the morning, and was not usually at the office when Marta left at night.

In addition, Marta Batmasian identified Rosario's "time card and pay records with comments," which were introduced as trial exhibits. Marta testified that these cards recorded the times of Rosario's arrival at and departure from work. Marta further testified that time cards for Investments Limited employees were automatically submitted to Paychex, an outside company, which automatically paid the employees. This would include overtime payment for any time over eight hours that an employee worked. Asked whether employees were paid for overtime at Investments Limited, Marta Batmasian replied, "Every single one, every single penny."

15

## C.    Analysis of Evidence

Here, the only evidence supporting plaintiff Rosario's claim was witness James Baker's testimony that he had seen the defendants make cash payments to Rosario, intended as overtime pay that "wasn't on the books." Considered in the light most favorable to plaintiff Rosario, and with all inferences drawn in her favor, this evidence establishes, at most, that the defendants paid Rosario for overtime work in cash. But Rosario's evidence does not establish the first element of an FLSA claim; namely, that Rosario worked any overtime for which she was not paid. Bailey, 776 F.3d at 801. Indeed, the district court found that Rosario had presented no evidence she did any work for which she was not paid. We agree. The defendants, on the other hand, provided evidence that Rosario was paid for all hours she worked, including overtime hours.

Because no trial evidence supported plaintiff Rosario's assertion that she worked overtime for which she was not paid, no reasonable person could conclude that she established the first element of her FLSA claim. 29 U.S.C. § 207(a)(1); Bailey, 776 F.3d at 801. Accordingly, the district court did not err in granting judgment as a matter of law in favor of the defendants. Bogle, 162 F.3d at 656.

## IV.  CONCLUSION

Based on the foregoing reasons, we conclude that the district court did not abuse its discretion in declining to continue the trial, and did not err in granting

judgment as a matter of law against plaintiff Rosario.  We therefore affirm the judgment against plaintiff Rosario.

**AFFIRMED.**