[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16032
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-01601-TCB


MELANIE MORGAN,

                                                      Plaintiff-Appellant,

versus

KALKA & BAER LLC,

                                                      Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 7, 2018)

Before MARCUS, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Melanie Morgan, proceeding pro se, appeals the grant of summary judgment

in favor of her former employer, Kalka & Baer, LLC, on her claims alleging race

discrimination, retaliation, and unpaid overtime.  Morgan brought her race

discrimination and retaliation claims under 42 U.S.C. § 1981, and unpaid overtime

claim and retaliation claims under the Fair Labor Standards Act ("FLSA"), 29

U.S.C. §§ 207(a)(1), 215(a)(3).  Morgan argues she presented evidence

demonstrating a genuine dispute about whether she was fired, whether her firing

was motivated by discrimination or retaliation, and whether she was owed

overtime wages under the FLSA.  After careful consideration of the record and the

parties' arguments, we affirm.

I.

Morgan began working as a case clerk for Kalka & Baer, a law firm, on

September 9, 2013.  Kalka & Baer has two named partners, Anthony C. Kalka and

A. Bryan Baer, as well as five staff members.  Of the five staff members, two were

African American—Morgan and Eve Poythress.  On February 21, 2014, the named

partners held a meeting with the staff members to address professionalism.  At that

meeting, the staff members were told they were "canned" if they could not return

to work on February 24 without "the drama."  Morgan was the only employee who

did not return to work on February 24, and she did not contact the firm to explain

why or ask about her job status.

Morgan filed her complaint on May 6, 2015.  On November 30, 2015, Kalka

& Baer filed a motion for summary judgment.  Morgan responded on December

2

28, 2015. The magistrate judge issued a report and recommendation ("R&R"), recommending the motion be granted. Over Morgan's objections, the district court adopted the R&R and granted summary judgment to Kalka & Baer.[1] This appeal followed.

## II.

"We review de novo a district court's grant of summary judgment, viewing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party." McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1141 (11th Cir. 2014). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id. "An issue of fact is material if it might affect the outcome of the suit under governing law and it is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Avenue CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013) (quotation marks omitted).

---

[1] In granting summary judgment to Kalka & Baer, the district court deemed the firm's "Statement of Undisputed Material Facts" to be admitted, in light of Morgan's failure to properly and timely respond to the firm's motion for summary judgment. Morgan does not challenge this ruling on appeal. She does not, for example, explain why her submissions were late or argue that the evidence was not available to her before her deadline to respond to Kalka & Baer's motion for summary judgment. Thus, we too deem Kalka & Baer's "Statement of Undisputed Material Facts" to be admitted. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam); Reese v. Herbert, 527 F.3d 1253, 1267–71 (11th Cir. 2008).

3

In resolving a motion for summary judgment, courts "must avoid weighing conflicting evidence or making credibility determinations." Id. (quotation marks omitted).  "All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." Id. (quotation marks omitted).  "We may uphold the district court's grant of summary judgment on any basis supported by the record." McCullum, 768 F.3d at 1141.

## III.

### A.     INTENTIONAL RACE DISCRIMINATION CLAIM UNDER § 1981

Morgan argues she presented evidence to show there was a genuine issue about whether she was fired and whether Kalka & Baer's stated reasons for firing her were pretext.  In support, she points to Baer's testimony before the Georgia Department of Labor regarding Morgan's application for unemployment benefits, which she says shows she was fired.  She argues the district court overlooked this evidence, which she submitted with her response to the summary judgment motion as well as in her objections to the R&R.  She contends that this evidence also shows Kalka & Baer's stated reasons for firing her are pretext.  She argues that the firm's explanations have changed from saying she was fired and not giving a reason why at the unemployment-benefits hearing to arguing to the district court

4

that she abandoned her job.  She asserts that this unexplained shift over time demonstrates pretext.

Employees can bring claims of intentional race discrimination under 42 U.S.C. § 1981.  See Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985). These claims require the same showing as those predicated on Title VII.  Id.  To assert such a claim, the plaintiff must prove "discriminatory treatment by a preponderance of the evidence."  Crawford v. Carroll, 529 F.3d 961, 975 (11th Cir. 2008) (quotation marks omitted).  This can be done "by presenting direct evidence of an intent to discriminate or circumstantial evidence using [the] burden-shifting framework" established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  Crawford, 529 F.3d at 975–76.

"Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (citation omitted). Morgan put forward evidence that Kalka and Baer made race-based statements to and about their African American employees.  For example, Poythress's unsworn declaration stated that Kalka would tell Poythress to "stay black" on Friday afternoons, a phrase adopted from the Spike Lee movie, Do the Right Thing.  The

5

declaration also stated that Kalka referred to Poythress as his "Black Work Wife" and that Poythress once overheard Baer tell another employee he did not like "Black people" and "that's why they're in the back of the office." The district court held that these remarks and others like them were unrelated to the decisionmaking process and thus were not direct evidence of discrimination under this circuit's rules. We affirm this ruling. See id.

This means this is a circumstantial evidence case, and we proceed using the McDonnell Douglas framework. See Crawford, 529 F.3d at 975–76. Under this framework, the plaintiff must first establish a prima facie case of discrimination. See id. To do so, the plaintiff must show: "(1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." Id. at 970. When a plaintiff makes this showing, there is a presumption of discrimination. Standard, 161 F.3d at 1331.

"The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption." Id. "This is a burden of production, not persuasion. [The employer] need only produce evidence that could allow a rational fact finder to conclude that [the plaintiff's] discharge was not made for a discriminatory reason." Id. "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory

reasons by showing that they are pretextual." Id.  The plaintiff "may do this (1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons." Id. at 1332.

In this case, the district court considered Morgan's late filings and evidence. It nonetheless determined that Morgan did not establish a prima facie case of discrimination because she did not show she suffered an adverse action—that is, she did not show she was in fact fired on February 21, 2014.  The court also made the alternative finding that, even if Morgan had made a prima facie case, Kalka & Baer satisfied its burden of production by offering legitimate, nondiscriminatory reasons for Morgan's firing.  Those reasons were (1) lack of professionalism and (2) failure to return to work.  The court found that when the burden returned to Morgan to show these reasons were pretext, she failed to make that showing.

We need not review the district court's findings as to whether Morgan was fired.  Even assuming she was fired and she made her prima facie case of discrimination, Kalka & Baer offered legitimate, nondiscriminatory reasons for her termination, and Morgan failed to show those reasons were pretext.

The undisputed facts show that Kalka and Baer called an all-staff meeting on February 21, 2014 to address issues of professionalism.  They told all staff they were "canned," unless they returned to work the following Monday ready to

7

behave in a professional manner.  Morgan was the only employee who did not return, and she did not contact the firm to explain her absence or ask about her job status.  These facts satisfy Kalka & Baer's burden of providing a legitimate business reason for Morgan's termination: Morgan was fired based on her lack of professionalism or because she failed to return to work.

Morgan argues Kalka & Baer's reasons are pretext because they have shifted over time.  First she was fired, then she abandoned her job.  Morgan says that Kalka & Baer admitted she was fired at the unemployment-benefits hearing but "failed to give a reason why."  Accepting Morgan's argument, Kalka & Baer's explanation that Morgan was fired because she abandoned her job, was the first time any reason was given for her firing.  Thus, this does not constitute a shifting reason and is not enough to show pretext.  See id. (determining that an employer's evidence that plaintiff was "slow, resistant to change, error-prone, and had disciplinary problems" was not a new reason but a "later elaboration" on the first reason that plaintiff was "less qualified than" others).  Because this is all that Morgan offers to challenge the district court's grant of summary judgment on the discrimination claim, we affirm its ruling.

B.    RETALIATION CLAIMS UNDER § 1981 AND THE FLSA

Morgan argues she presented evidence showing she was fired because she reported racial discrimination, in violation of § 1981, or because she asked about her pay, in violation of the FLSA.[2]

Litigants can bring retaliation claims under § 1981 and the FLSA. See CBOCS W., Inc. v. Humphries, 553 U.S. 442, 445, 128 S. Ct. 1951, 1954 (2008); Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342 (11th Cir. 2000). Under both statutes, in the absence of direct evidence, a plaintiff must establish a prima facie case of retaliation by showing that she (1) engaged in statutorily protected activity; (2) suffered an adverse action by her employer; and (3) there was a causal connection between the two. See Bryant v. Jones, 575 F.3d 1281, 1307–08 (11th Cir. 2009); Wolf, 200 F.3d at 1342–43. Proof of "[t]hese three elements create[s] a presumption that the adverse action was the product of an intent to retaliate," and the burden shifts to the employer to offer proof of a legitimate reason for the adverse action. See Bryant, 575 F.3d at 1308; Wolf, 200 F.3d at 1343. If the

---

[2] Morgan also says she was fired for reporting a sexual assault she witnessed. This claim was presented to the district court for the first time in Morgan's response to Kalka & Baer's motion for summary judgment. The magistrate judge held that Morgan could not amend her complaint and raise new claims through argument in a brief opposing summary judgment. Because Morgan does not challenge that ruling on appeal, we do not consider it. See Timson, 518 F.3d at 874.

employer offers such proof, the burden shifts back to the plaintiff to show the offered reason is pretext.  See Bryant, 575 F.3d at 1308; Wolf, 200 F.3d at 1343–44.

Morgan has pointed to no direct evidence of retaliation.  Even assuming Morgan met her burden to establish a prima facie case that she was fired in retaliation for her complaints of race discrimination or her questions about her pay, Kalka & Baer has offered legitimate reasons for her firing.  Again here, Morgan has not shown these reasons were pretext.  See Bryant, 575 F.3d at 1308; Wolf, 200 F.3d at 1343–44.  Thus, the district court did not err by granting summary judgment in favor of Kalka & Baer on the retaliation claims.  See McCullum, 768 F.3d at 1141.

C.     UNPAID OVERTIME CLAIM UNDER THE FLSA

Morgan argues she produced evidence showing she worked over 40 hours some weeks and was not paid overtime.  In support, she refers to exhibits she filed with her objections.  These include her time sheet for September 21, 2013 through October 4, 2013; her time sheet for November 18, 2013 through December 31, 2013; and her time sheet for January 1, 2014 through February 21, 2014; as well as a paycheck stub for the pay period between January 26, 2014 and February 10, 2014, reflecting payment for 80 hours of work.  She also points to a letter she

received from Kalka & Baer's attorney stating that "[a]ny overtime was de minimis, as reflected in her time sheets."

The FLSA requires employers to pay employees at least one and a half times their regular wage for any hours worked beyond the 40-hour workweek. 29 U.S.C. § 207(a)(1). If the employer fails to do so, employees can bring a FLSA action for damages. Id. § 216(b). "An unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime worked." Bailey v. TitleMax of Georgia, Inc., 776 F.3d 797, 801 (11th Cir. 2015). "Although a FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation, . . . [i]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." Allen v. Bd. of Pub. Educ. For Bibb Cty., 495 F.3d 1306, 1315 (11th Cir. 2007). "[I]f an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes," then "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. at 1315–16 (quotation marks omitted).

In her deposition, Morgan testified that she was not claiming overtime for the time period between September 10, 2013 and October 4, 2013. She said she

11

recorded her time by logging into a software system with her username and password, recording the number of hours she worked that day, and submitting the entry for approval. She says when she submitted 9, 9.5, or 10 hours, only 8 would be approved. Morgan said she worked 140 unpaid hours and "tried to keep a note of it" by "go[ing] back and review[ing] [her] e-mails" and "mileage statements." She could not identify the specific dates she worked more than 8 hours, but offered to produce the emails and mileage statements on which she relied. Morgan's list of exhibits accompanying her objections does not include any reference to emails or mileage statements supporting her unpaid-overtime claim.

On this record, Morgan failed to establish there was a genuine issue about whether she worked unpaid overtime. See Bailey, 776 F.3d at 801. Morgan's deposition testimony called into question Kalka & Baer's record-keeping. See Allen, 495 F.3d at 1315. But she did not offer any documentation of her own, submitting only the same time sheets put into evidence by Kalka & Baer. Id. at 1315–16. And in any event, Morgan's documentation does not show she worked unpaid overtime. The time sheet corresponding to the only paystub in the record, for the time period between January 26, 2014 and February 10, 2014, shows Morgan worked 40 hours per week for those two weeks. The paystub showing payment for 80 hours with no overtime pay is therefore accurate.

To the extent Morgan rejects Kalka & Baer's records, the burden is on her to produce specific evidence showing she did in fact perform work without compensation and that her work was in excess of the 40-hour workweek.  See id. Morgan failed to do so.  She produced no evidence of the emails or mileage statements she relied on to claim she worked 140 unpaid hours.  Neither did she produce any evidence suggesting those 140 hours were worked in excess of the 40-hour workweek.  Therefore, the district court correctly granted summary judgment to Kalka & Baer on this claim.

**AFFIRMED.**